(155 App. Div. 139.)

## PEOPLE v. VITUSKY.

(Supreme Court, Appellate Division, First Department. February 7, 1913.)

1. CRIMINAL LAW (§ 1186*)—APPEAL—AFFIRMANCE—TECHNICAL DEFECTS.

Where the trial was fair, all the defendants' rights were protected in the judge's charge, the court did not refuse any requested instructions, and the evidence clearly sustained a verdict of guilty, the judgment will be affirmed under Code Cr. Proc. § 542, providing that judgment should be given without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230; Dec. Dig. § 1186.*]

2. THREATS (§ 7*)—CRIMINAL LAW—ATTEMPTED EXTORTION—EVIDENCE.

In a prosecution for attempt to extort money by threats of violence, evidence *held* to warrant a verdict of guilty.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 12; Dec. Dig. § 7.*]

3. CRIMINAL LAW (§ 547*)—EVIDENCE AT FORMER HEARING—AUTHENTICATION—WAIVER.

Where a witness testified at a preliminary trial under oath, and his testimony was taken down in shorthand by the official stenographer, but not transcribed or signed by the witness or authenticated by the judge, and the grand jury returned an indictment thereon, and the defendant did not ask that the witness sign, but cross-examined him, the defendant will be held to have waived the requirement of Code Cr. Proc. §, 204, that it be authenticated, and a longhand transcription thereof by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clerk made after the death of the witness was admissible as a deposition under section 8, subd. 3, providing that when there has been a preliminary trial, and the evidence of a witness reduced to the form of a deposition, and the witness is shown to be dead, it is admissible.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1237–1246; Dec. Dig. § 547.*]

**4. CRIMINAL LAW (§ 662*)—TRIAL—CONFRONTATION OF WITNESSES—READING TESTIMONY OF DEAD WITNESS.**

Code Cr. Proc. § 8, subd. 3, providing that when there has been a preliminary trial, and the evidence of a witness at such trial has been reduced to the form of a deposition, and the witness is shown to be dead his testimony may be read, is not unconstitutional as depriving an accused of the right to be confronted with the witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1538–1548; Dec. Dig. § 662.*]

**5. THREATS (§ 7*)—EVIDENCE.**

In a prosecution for attempted blackmail on Saturday, when defendant threatened to blow prosecuting witness' head off, evidence that a bomb was exploded by some one in his apartment the next Monday was admissible.

[Ed. Note.—For other cases, see Threats, Cent. Dig. § 12; Dec. Dig. § 7.*]

**6. CRIMINAL LAW (§ 1208*)—FELONIES—SENTENCE.**

One who attempted to extort money by threats of death was guilty of a felony under Penal Law (Consol. Laws 1909, c. 40) §§ 850, 851, defining extortion, and providing that certain threats constitute extortion, and was properly sentenced as for a conviction of a felony; section 857, providing that certain threats shall constitute a misdemeanor, expressly providing that it did not apply to matters within section 851.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3281–3287, 3289–3295; Dec. Dig. § 1208.*]

Scott and McLaughlin, JJ., dissenting.

Appeal from Court of General Sessions, New York County.

Charles Vitusky was convicted of an attempt to extort money by threats of violence, and he appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

K. Henry Rosenberg, of New York City, for appellant.
Robert S. Johnstone, of New York City, for the People.

INGRAHAM, P. J. There are two counts in the indictment. The first charges the defendant with an attempt to obtain from one Louis Blumenthal, by the wrongful use of fear, by threatening the said Blumenthal to do an unlawful injury to his person—that is to say, to kill him—unless the said Blumenthal should pay to the defendant the sum of $500, with intent thereby to induce such fear on the part of Blumenthal so that he would pay to the defendant the said sum of money. And the second charges that the defendant, to obtain from Blumenthal the sum of $500, did threaten to do an unlawful injury to the person of the said Blumenthal—that is to say, to kill him—unless he should then and there pay to defendant the said sum of money, but the said act then and there failed to effect the commission of the

said crime and extortion. The defendant was convicted as charged in the indictment, and from the judgment entered thereon he appeals. :

The defendant relies upon two exceptions to rulings on the admission of evidence to which attention should be called. The first was that the trial court.erred in admitting the testimony of Louis Blumenthal, the complainant, given upon the preliminary examination of the defendant before the magistrate; and the second point was that the court erred in admitting evidence of the explosion of a bomb in the tenement house where Blumenthal lived in the early morning of December 11th, the threat having been made on the afternoon of December 9, 1911.

[1] But, before discussing these questions, it is proper to state that we have carefully examined this record, and entertain no doubt of the defendant's guilt. He received a fair trial, the case was submitted to the jury by a charge in which all of the defendant's rights were protected, the court did not refuse to charge any request made by the defendant, and the jury found the defendant guilty upon evidence which clearly sustained their verdict. The court therefore is required by section 542 of the Code of Criminal Procedure to give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties.

The crime was alleged to have been committed on December 9, 1911. The defendant was arrested on the complaint of Blumenthal on December 11, 1911, his examination was had before the magistrate on December 13, 1911, when the complainant was fully examined by the magistrate, and cross-examined by the counsel for the defendant on the trial. Having proved that Blumenthal was dead, the people called the stenographer who took the stenographic report of Blumenthal's testimony, who produced his original minutes of the examination and a correct transcript from the stenographic notes of the testimony of Blumenthal, including his examination and cross-examination, which was read to the jury. This testimony, as before stated, was taken by the stenographer in the presence of the defendant and his counsel. The transcript from the stenographic notes was not written out until after the death of Blumenthal, and his deposition was not signed by him. On the examination before the magistrate, there was no request either by the district attorney or by the defendant or his counsel that the notes should be transcribed and signed by the witness, but upon that testimony the defendant was held for the grand jury and subsequently indicted. Section 850 of the Penal Law (Consol. Laws 1909, c. 40) provides:

"Extortion is the obtaining of property from another with his consent induced by a wrongful use of force or fear or under color of official right."

And section 851 provides that fear such as will constitute extortion may be induced by an oral or written threat, first, to do an unlawful injury to the person or property of the individual threatened or to any relative of his or to any member of his family. " * * * Sixth, to injure his person or property or that of any relation of his or member of his family by the use of weapons or explosives." And

section 852 provides that a person who extorts any money or other property from another under circumstances not amounting to robbery is punishable by imprisonment not exceeding 15 years if the same is done by means of force or a threat mentioned in section 850, or in either of the first four subdivisions of section 851, and by imprisonment for not less than 5 years nor more than 20 years if the same is done by means of a threat mentioned in subdivision 5 or 6 of the latter section (section 851). And section 2 of the Penal Law provides:

"Attempts to commit a crime.—An act done with intent to commit a crime and tending, but failing to effect its commission is an attempt to commit that crime."

Blumenthal, the complainant, testified before the magistrate that the defendant telephoned him on Tuesday that he, defendant, wanted $500 from the complainant. The complainant replied he could not give it to him, to which defendant said: "You got lots of friends. You can find out friends to whom you can go for it." To which complainant replied: "I have not friends. I don't know."

On the following Saturday afternoon about a quarter past 1 defendant came up to the complainant's place of business, and called to the complainant to come over to him. Defendant said, "Don't you know me?" to which complainant replied, "I don't know you." Defendant said, "You never heard about the $500?" and complainant said, "Never." Defendant said, "But I have lots of time telephone about the $500." And afterwards said, "What are you going to do about it, about the $500?" to which complainant said, "I will not give you a penny. I don't know." Defendant then said, "If you don't sock up $500, I will blow your head off." On cross-examination the witness stated that he did not see the defendant on Sunday, the day following the conversation; that what the defendant said on Saturday when the complainant told him he would not give him the money was, "Well, I am going to take your head off;" that the defendant said to the complainant in English, "If you will not sock up the money, I will blow your head off." The witness further said that two men, Cohen and Wilson, were within a short distance of him at the time of this conversation on the trial. Wilson was called as a witness, and testified that he worked for complainant; that on December 9, 1911, he saw the defendant come up and beckon to the complainant, who went over and talked to him; that the conversation lasted between four and five minutes; that he heard the defendant say to the complainant, "I want $500," which plaintiff refused, and then heard defendant say, "I will get your head before long." Cohen was also called as a witness, and testified that he went across the street to the complainant to tell him that his dinner was ready while the complainant was talking with the defendant, that he heard the defendant say to the complainant, "I want to have $500," which complainant refused, and the defendant said to him, "I will get your head before long," or "I will blow your head off;" that after that the defendant jumped on his wagon and drove off. The defendant was arrested on the morning of the 11th of December. When the defendant was arrested, the offi-

cer told him that he was going to place him under arrest on suspicion of having caused the explosion of a bomb at 2 a. m. on that morning in front of Mr. Blumenthal's apartment on the fifth floor of 202 Henry street, for the reason that Mr. Blumenthal said that "you went down to his place of business at 55 Rutgers Slip on the 9th of December, and demanded $500 from him under a threat to blow his head off;" that the officer then said to defendant, "Now, did you go down and demand that money and make that threat?" to which the defendant said, "I did. I was sent down by two men." The officer then said, "Who are those men?" to which defendant said, "I don't know. They gave me a dollar." The defendant further said that he did not know anything about the explosion of the bomb, and the defendant refused to say who the two men were. The defendant was called as a witness, and expressly denied that he asked or demanded from Blumenthal the sum of $500 or made any threat.

[2] I think it is clear that, upon this testimony, the verdict that the defendant was guilty of an attempt to commit the crime of extortion was amply sustained by the evidence. Here was an oral threat to injure Blumenthal by the use of weapons or explosives, and, if Blumenthal had paid to the defendant $500 as the result of that threat —induced by fear caused by that threat—the defendant would have been guilty of extortion, and that the defendant having by the threat attempted to secure the money was an attempt to commit the crime. That the defendant made the threat was proved by the two witnesses who heard parts of the conversation between complainant and defendant as well as by the testimony of the complainant taken before the committing magistrate, and the defendant admitting making the threat to the police officer who arrested him, claiming, however, that he did it as a messenger from two unknown men whom he failed to identify. The charge against the defendant was therefore substantially proved, and no one reading the record can have any serious doubt about his guilt.

[3] The first question presented is whether it was error for the court to allow the deposition of Blumenthal to be read upon the trial of the action. By subdivision 3 of section 8 of the Code of Criminal Procedure it is provided that the defendant is entitled to produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate and the testimony reduced by him to the form of a deposition in the presence of the defendant, who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness, " * * * the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead." The question, therefore, is whether the testimony of the witness produced by the people at the preliminary examination before the magistrate was "reduced by him to the form of a deposition" in the presence of the defendant.

[4] It is now settled that subdivision 3 of section 8 of the Code of Criminal Procedure does not violate any constitutional provision, and it is also settled that in criminal as well as civil cases the evidence of a

deceased witness given on a former trial could be read on the second trial. People v. Elliott, 172 N. Y. 146, 64 N. E. 837, 60 L. R. A. 318, when it was held that this provision evidently sought to codify what was a general rule at common law in both civil and criminal cases, as it is very clear that the right of confrontment has been carefully guarded in this and other states by only admitting such testimony or depositions as were taken in the presence of the accused represented by counsel exercising the full right of cross-examination. See, also, People v. Williams, 35 Hun, 516, where Judge Daniels, speaking for the General Term of the Supreme Court said, and which statement was quoted with approval by the Court of Appeals in People v. Elliott, supra:

"It is manifest from the authorities permitting the deposition or evidence of any deceased witness to be read upon the trial of the accused that it has not been deemed essential that he should be confronted by the witnesses against him on the trial itself, but if the evidence be taken in the course of the proceeding in his presence, and with the right or privilege of cross-examination secured to him, that will be sufficient to allow the deposition to be read in the case of the decease of the witness making it between the time when it may be taken and the time of the trial."

I think it is clearly established that at common law in a criminal action the prosecution had the right to read in evidence the deposition of a party taken before a committing magistrate where the defendant had had full opportunity of cross-examining the witness, and where it appeared that the witness was dead or for other reasons his presence at the trial could not be procured.

In People v. Fish, 125 N. Y. 136, 26 N. E. 319, one of the important witnesses for the people was sworn upon the preliminary examination before the police justice. The defendant was there with counsel to cross-examine the witness. The examination of the witness was reduced to writing, read over to him, subscribed by him, and properly certified. The witness was subpœnaed to attend the trial, and, not appearing, the district attorney, against the objection of the defendant's counsel, was permitted to read the deposition in evidence. It was held that the prosecution was authorized to read this deposition under subdivision 3 of section 8 of the Code of Criminal Procedure. In that case the deposition was brought expressly within the provisions of the Code of Criminal Procedure, under which it was read, and the question that was presented to the court was whether that provision was in violation of either the state or federal Constitution. Attention was called to the fact that there was no provision in our Constitution that the accused should enjoy the right to be confronted with the witnesses against him; that the provision of the Bill of Rights which provided that in all criminal prosecutions the accused had the right to be confronted with all the witnesses against him was a statutory enactment, and the Legislature could repeal or alter it; that there was no provision in the federal Constitution which affected the question, and it was held that, under the circumstances, the right of the defendant to be confronted with the witnesses within the meaning of the federal Constitution and the Bill of Rights was not denied to him; that the evidence of the witness was taken in his presence where he

had the opportunity to cross-examine him, and where he did, in fact, cross-examine him, and thus he had all the protection that the Bill of Rights and the Constitution were intended to secure him; that these provisions were not intended to secure to the accused person the right to be confronted with the witnesses against him upon his final trial; but to protect him against ex parte affidavits and depositions taken in his absence, as was frequently the practice in England at an early day; that it was never regarded as an invasion of the fundamental rights of an accused person to read depositions upon his trial, if at some state of his case he could be confronted with and cross-examine the witnesses to be used against him.

In Commonwealth v. Richards, 18 Pick. 434, 29 Am. Dec. 608, the Supreme Court of Massachusetts held that such evidence was competent, and the rule is there stated, quoting from 2 Lilly's Abr. 745:

"If one who gave evidence on a former trial be dead, then upon/proof of his death any person who heard him give evidence and observed it shall be admitted to give the same evidence as the deceased witness gave provided it were between the same parties."

Section 8 of the Code of Criminal Procedure states the rights of a defendant in a criminal action. The defendant is entitled to a speedy and public trial, to be allowed counsel as in civil actions or to appear and defend in person and with counsel, to produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness. The deposition of a witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the state. This section was part of the Code of Criminal Procedure as originally enacted as chapter 442 of the Laws of 1881, and its foundation was the Bill of Rights (1 Rev. Stat. p. 94, § 14). But we have seen that the provision of the Bill of Rights was complied with if the defendant at any stage of the proceedings was confronted with the witnesses against him, and the testimony of such witnesses taken in his presence with a full and complete right of cross-examination. This section of the Code, however, expressly permits the deposition of a witness when taken at a preliminary examination before a magistrate to be read where the witness at the time of the trial is dead or insane, or cannot with due diligence be found within the state at the time of the trial. But, to justify the reading of such testimony under this permission, the testimony must be reduced by the magistrate to the form of a deposition in the presence of the defendant. Section 148 of the Code of Criminal Procedure provides for this proceeding before issuing a warrant; that, when an information is laid before a magistrate of the commission of a crime, he must examine on oath the informant or prosecutor and any witnesses he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them. And section 149 provides that the depositions

must set forth the facts stated by the prosecutor and his witnesses tending to establish the commission of the crime and guilt of the defendant. By this section the depositions must be in writing, and subscribed by the parties making them. Upon these depositions warrant of arrest issues. Section 188 then provides that, when the defendant is brought before the magistrate upon an arrest on a charge of having committed a crime, the magistrate must immediately inform him of the charge against him, and of the right to the aid of counsel in every stage of the proceedings and before any further proceedings are had. Section 194 provides that at the examination the magistrate must in the first place read to the defendant the depositions of the witnesses examined on the taking of the information, and, if the defendant requests it or elects to have the examination, must summon for cross-examination the witnesses so examined if they be in the county. Section 200 provides that the statements made by the defendant must be reduced to writing by the magistrate or under his direction, and authenticated as therein provided. Section 204 provides that the testimony given by each witness must be reduced to writing as a deposition by the magistrate or under his direction and authenticated in the following manner: First, the authentication must state the name and age of the witness, his place of residence, and his business or profession. It must, unless a deposition by question and answer be waived by the defendant and the witness, contain the questions put to the witness and his answers thereto. It must also contain any objections taken by either side and overruled, and the deposition must be signed by the witness, or, if he refuses to sign it, his reason for refusing must be stated in writing, as he gives it. It must be signed and certified by the magistrate. And it is then provided in subdivision 6:

"The foregoing provisions shall apply to preliminary examinations in the city and county of New York only when either the defendant or the district attorney or the representative of the district attorney, shall so elect."

Reading these sections together, we have to determine what was intended by the Legislature by the words, "and the testimony reduced by him to the form of a deposition in the presence of the defendant who has either in person or by counsel cross-examined or had an opportunity to cross-examine the witness," in section 8 of the Code.

It seems to me clear that in a county other than New York the deposition referred to was a deposition reduced to writing as required by section 204 of the Code, but in the county of New York such a deposition was not required unless either the district attorney or the defendant requested it. The defendant had the right to have the testimony of the witness reduced to the form of a written deposition and authenticated by the signature of the witness and by the magistrate, but he could waive that right, and in this case did waive it by not requiring it. Consequently the testimony of the witness was taken down by the stenographer, an official duly appointed, whose duty it was to take down in shorthand writing the questions and answers propounded to each witness produced before the magistrate, and were so taken down in the presence of the witness and of the defendant, and in a

condition to be properly authenticated. The shorthand notes of this examination became a part of the proceeding before the magistrate, and, although not literally transcribed in longhand, there was an authentic record of it as part of the proceeding before the magistrate. Section 8 of the Code does not require the deposition to be in writing subscribed by the witnesses or authenticated by the magistrate. All it requires is that the testimony should be reduced by the magistrate to the form of a deposition in the presence of the defendant. I think it was undoubtedly reduced to the form of a deposition by the stenographer acting under the direction of the magistrate in taking down each question and answer made by each of the witnesses who testified before him. It had not been transcribed from his notes in writing. It had not been signed by the witnesses. It had not been authenticated by the magistrate; but neither of these acts were required in the county of New York, and the testimony of the witnesses stood in the stenographer's minutes as part of the minutes of the magistrate on the examination. And thus it seems to me that the testimony had been reduced to the form of a deposition. If the testimony had been taken down in longhand instead of shorthand by the stenographer, and the writing was before the magistrate, there could be, I think, no doubt but what the deposition of the witness would be admissible upon the trial, although it had not been signed by the witness nor authenticated by the magistrate. If the defendant had requested that the testimony thus reduced to the form of a deposition by the stenographer should be written out and properly authenticated, it could have been done. He made no such request, and therefore waived the provision of the Code which required it to be so written out and so authenticated. Thus the testimony of the witness had been reduced to the form of a deposition in the presence of the defendant, and therefore the condition provided for by subdivision 3 of section 8 of the Code of Criminal Procedure had been complied with. The object of this section of the Code was to enforce the rule that seems to be settled by the authorities to which attention has been called, that, where a written deposition existed, the writing was the best evidence, and must be produced and oral testimony of what the witness had testified to was inadmissible; or, where there had been no written deposition, the testimony could not be received, unless the witness could testify to the exact language used by the witnesses and all of his testimony. So, when this provision of the Code was enacted, it was intended to restrict the use of testimony taken on preliminary examination at the trial to a case where there had been a complete record made of the testimony of the witness, so that a prisoner should not be exposed to the uncertainty of recollection of persons who had heard the witnesses testify. But in all proceedings in the county of New York either before magistrates or courts of record the law provides for a complete stenographic report of the proceedings had, and it is upon the substantial accuracy of these reports that all judicial proceedings are based. Therefore the intent of this provision is fully preserved by holding that, when testimony in a judicial proceeding is thus recorded by an official stenographer, his record of the proceeding when subsequently transcribed furnishes the very

best evidence of the exact testimony of a witness whether the proceedings are before a court or magistrate. In this case the rights of the defendant were fully protected. He was confronted by the complainant before the magistrate, the testimony of the complainant was taken in the presence of the defendant, and transcribed in his presence in the notes of the stenographer, and he had the fullest right to cross-examine which the record shows he exercised, and each question and answer of the witness was taken down by the official stenographer, and thus was taken in the form of a deposition. The writing out of the testimony from the notes of the stenographer was a detail which the defendant could have insisted upon but which he waived by failing to request, and on the subsequent death of the complainant the fact that the notes had not been transcribed in the presence of the defendant was not a substantial objection to the introduction of the evidence.

[5] The only other objection by the defendant that it is necessary to notice is the exception to the testimony that early in the morning of December 11, 1911, the threat having been made in the afternoon of December 9th, a bomb exploded at the door of the complainant's apartment, and it is claimed by the defendant that the court committed substantial error in allowing the proof of the fact of this explosion. I think, however, that, in view of the situation as it existed in this case, this evidence was competent. On Saturday afternoon the defendant demanded of complainant this sum of $500, and threatened if the money was not paid he would blow the complainant's head off. On Monday morning, December 11th, an attempt to "blow the complainant's head off" was made, and on the same day at half-past 7 in the morning the defendant was arrested. The officer told the defendant that he was arrested on suspicion of having caused the explosion of a bomb at 2 a. m. that morning in front of Mr. Blumenthal's (complainant) apartment on the fifth floor of 102 Henry street, "for the reason that Mr. Blumenthal said that you went down to his place of business at 65 Rutgers Slip on the 9th of December, and demanded $500 from him under a threat to blow his head off." The officer then asked the defendant, "Now did you go down and demand that money and make that threat?" Defendant said, "I did. I was sent down by two men." And when the officer said, "Who are these men?" the defendant replied, "I don't know. They gave me a dollar." Within a few hours the defendant was arrested, admitted the making of the threat, said he was employed by two men to make the threat, and paid a dollar for making it, but failed to identify the men, or give any information which would lead to their arrest. The defendant, when called to the stand, admitted having a conversation with the complainant on the afternoon of December 9th, but denied that he made any threat to blow the complainant's head off, but said that the conversation had relation to stopping a fight, and that two men whom he again failed to identify, claiming that he knew nothing about them, had paid him a dollar for making the communication that he did to the complainant. What the defendant threatened to do was to blow the complainant's head off. According to the threat "I" was to do the act unless the complainant paid him $500. The complainant

refused to pay the money, and there followed within 36 hours an explosion which was designed to carry out the threat. It seems to me that it was a material fact to be proved that an explosion, which was just what the defendant had threatened, actually took place shortly afterwards, and the result of which attempted to make effective the threat which was made. As a fact which would tend to throw light upon the intent of the defendant in making the threat, it seems to me that this testimony was entirely competent. Whether it is called part of the res gestæ or an independent fact which has probative force in proving that the defendant attempted to commit the crime of extortion on the afternoon of December 9th it is not material to determine. My view of it is that it was a fact which in itself tended to prove that the defendant did make a threat on the afternoon of December 9th for the purpose of extorting money from the complainant, and that the explosion followed as the natural result of the refusal of the complainant to comply with the defendant's demands.

The principle upon which I consider this testimony admissible is stated by the learned author of Wigmore on Evidence (section 105) as follows:

"Where one threatens to do an injury to another and that or a similar injury afterwards happens, this furnishes ground to presume that he who threatened the act was the perpetrator or instigator."

In People v. Kennedy, 32 N. Y. 141, the defendant was indicted for the crime of arson in burning the barn of one Marshall on the 27th of August, 1863. The evidence connecting the defendant with the actual burning of the barn was that about a fortnight before the fire he had threatened to have revenge upon Marshall, to burn and damage his property all he could, and burn his buildings, and he also threatened him with personal injuries. Chief Judge Denio, in commenting upon the probative force of the testimony of these threats, said:

"This, it may be conceded, raised a presumption of some weight that he had burned the barn. It was presumedly fired by some man who had malice against Marshall, the owner. A presumption of the same kind and of the same status arose out of the same circumstances that he had attempted to burn the woodhouse and dwelling."

And it was not suggested that the evidence was not competent. In Stokes v. People, 53 N. Y. 164, 13 Am. Rep. 492, the defendant offered to prove that the deceased a short time before the occurrence had made violent threats against him. Evidence of threats made by the deceased which had been communicated to the accused was received by the court, but evidence of threats which had not been so communicated was rejected. This was held to be error, and the court said:

"For the reason that threats made would show an attempt to execute them probably when an opportunity occurred, and the more ready belief of the accused would be justified to the precise extent of this probability. But an attempt to execute threats is equally probable, when not communicated to the party threatened as when they are so; and when, as in this case, the question is whether the attempt was in fact made, we can see no reason for excluding them in the former that would not be equally cogent for the ex-

clusion of the latter, the latter being admissible only for the reason that the person threatened would the more readily believe himself endangered by the probability of an attempt to execute such threats. Threats to commit the crime for which a person is upon trial are constantly received as evidence against him, as circumstances proper to be considered in determining the question whether he has, in fact, committed the crime, for the reason that the threats indicate an intention to do it, and the existence of this intention creates a probability that he has in fact committed it."

See, also, Jewett v. Banning, 21 N. Y. 27.

The rule is therefore established that a threat to do an action is competent evidence to show that the person making the threat intended to carry it out. In the Stokes Case, supra, the threat held competent was that the deceased intended to injure the defendant, and that was held competent as a fact having probative force to prove that the deceased did intend to do what he threatened. We have here a threat to blow the complainant's head off. It seems to me that the threat having been proved that it was competent to prove that the defendant was connected with the subsequent attempt to accomplish what was threatened. It seems to be conceded that, if there had been any evidence to show that the defendant was connected with the explosion, then the fact of the explosion would have been competent; and yet this testimony of the threat was competent evidence to prove that the subsequent explosion was committed by the defendant, or that he was connected therewith. The threat was that he, the defendant, would blow the complainant's head off. It was not that somebody else would do it, but that he would do it, and if the fact that the defendant did subsequently attempt to carry out his threat would have been competent evidence to show the intent with which he made the threat, and, if making the threat was competent evidence to show that he had been connected with the explosion, the fact that there was an explosion was competent evidence to prove the intention of the defendant to extort money from the complainant. With the probative force of the testimony we are not concerned. The only question here is whether it was error to admit the testimony, and I think it was not.

[6] If the defendant had succeeded in extorting this $500 from the complainant by reason of this threat, it would have been, I think, clearly a felony under sections 850 and 851 of the Penal Law. Section 857 of the Penal Law expressly provides that this section was not to apply to matters governed by section 851, and the court therefore properly sentenced the defendant as for a conviction of a felony. The other points taken by the defendant do not require discussion.

My conclusion, therefore, is that the judgment appealed from should be affirmed.

LAUGHLIN and DOWLING, JJ., concur.

SCOTT, J. (dissenting). I concur entirely in the opinion of the Presiding Justice, except as to the admissibility of the evidence showing that after the making of the alleged threat some unknown person placed a bomb in the apartment occupied by the complaining witness.

The alleged threat to "blow off the head" of the complainant if he refused to submit to extortion was made on a Saturday afternoon.

The people were allowed to prove that shortly after midnight on the following Sunday night, or Monday, a bomb exploded in one of the rooms of the apartment occupied by the complaining witness and his wife. There was no evidence connecting defendant with the placing of this bomb, except such inference as might be drawn from his threat. I am unable to see how this evidence was admissible, and, if inadmissible, it certainly was most damaging to defendant. If defendant had been indicted for setting off the bomb, I have no doubt that his previous threat to blow off complainant's head would have been relevant. Wigmore on Evidence, § 105; Stokes v. People, 53 N. Y. 175, 13 Am. Rep. 492. But this was not the case. The charge against the defendant was that he made the threat, and, in my opinion, evidence that afterwards some unknown person did attempt to blow up the complainant does not tend to prove the fact of the previous threat. The two occurrences were not so closely connected in point of time that the attempt constituted a part of the res gestæ of the crime charged.

In People v. Adrogna, 139 App. Div. 595, 124 N. Y. Supp. 68, the defendant was convicted of the crime of extortion through fear inspired by certain letters received by the complainant. The only question in the case was whether defendant wrote the letters or acted in conjunction with those who wrote them. This court found sufficient in the evidence to sustain the conviction from the manner in which the defendant spoke of and referred to the letters. That case, as I read it, furnished no ground whatever for receiving in the present case evidence of the explosion of the bomb with which there was no effort to connect the defendant. On this ground alone in my opinion the judgment should be reversed.

McLAUGHLIN, J., concurs.