## THE PEOPLE v. HUGH KENNEDY.

Circumstantial evidence is proper on the hypothesis that certain things are usual concomitants of each other; therefore, one set of the facts must be proved, that the other may be reasonably inferred therefrom.

If circumstantial evidence is introduced to connect the defendant with the criminal act, the circumstantial facts themselves must be connected with the defendant, or they will be incompetent as evidence.

Where the direct evidence is insufficient, collateral circumstances may be adduced in aid thereof; but if the same defect attach alike to the collateral circumstances, they will be incompetent as evidence.

Writ of error to the Supreme Court to review a judgment of that court, reversing a conviction of the defendant in error, in the Court of Sessions of Saratoga county, of the crime of arson, and ordering a new trial. The present writ of error was brought by the district attorney, pursuant to the act of 1852, ch. 82.

The indictment was for the burning of a barn of one Henry Marshall, in Stillwater, in night time, on the 27th August, 1863. It was proved that the barn in question, having a carriage house and stable attached, was burned down at the time mentioned. The evidence to charge the defendant, consisted of threats which it was proved by the prosecutor and his wife he had made, to have revenge upon Marshall, to burn or damage his property all he could, and to destroy his buildings. He also threatened him with personal violence. The threats were said to have been made about a fortnight before the fire, on the occasion of an altercation between Marshall and the prisoner, at which the latter, who was at work for Marshall, refused to perform immediately some service which he was directed to do, when he became exceeding angry, and left his employment contrary to his agreement. Other similar threats were made by the prisoner the next day, when the party met at the defendant's house, and had a difficulty about a trespass by the defendant's hogs in Marshall's corn, and about the defendant's wages which Marshall withheld. They were proved by Marshall. The answering evidence consisted in

an attempt to show a motive on the part of Marshall to burn the building himself, in order to defraud an insurance company· by whom it was insured, for an amount as was claimed, above its value.    There was no direct evidence to charge the defendant, and the only other proof beyond the threats, and that which was admitted under the exceptions upon which the question arises, was a fact testified to by Marshall, that a few days after the altercation, and twelve days before the burning, he saw the defendant late in the evening, come round the corner of the wagon house, out of the street, without apparent object, and that when accosted by Marshall as to where he was going, he said he was going home ; and the further testimony, that the day after the fire, he declared that he went to bed at six o'clock the preceding evening, and did not rise until seven in the morning, while it was shown by the testimony of a daughter of Marshall, that she was at the defendant's house that evening on an errand, and left at eight o'clock, when the defendant was up, and had not apparently been in bed.    The defendant lived in a house of Marshall, about one-fourth of a mile from the building burned.    Marshall's dwelling house, with a kitchen and wood-house at the rear end, was upon the opposite side of the highway from the barn, and about eight rods from it.

The following testimony was received against the objection of the defendant's counsel, who excepted to the rulings admitting it, and afterward moved, without success, to have it stricken out.    The wife of Marshall swore, that about a week after the burning of the barn, having been requested by her husband to examine and see if she could find anything about the premises which would take fire, she discovered some matches and some fine kindlings at the northwest corner of the wood-house under some old boards and shingles which had lain there some time.    She said she was out to bring in the clothes, and saw the stuff, and thought she would pick it up, and in doing so she found the kindlings under it and the matches under the kindlings ; that she then went to the defendant's house and asked his wife to lend her some matches, and, having obtained them, she carried them home, and found

that they were unlike any she kept or ever had in her own house, but the kindlings, she said, were similar to those kept in their wood-house. The matches found, and those borrowed of the defendant's wife, with those kept by the witness, and also the kindlings, were exhibited to the jury. The witness also stated that on the day of the altercation between her husband and the defendant, and after it had taken place, the defendant inquired of her whether, if the wood-house took fire, it would burn the house, to which she answered that there would be nothing to prevent the burning of the house, as the fire would hinder them from getting to the cistern. It was proved that matches of the description said to have been found, were commonly sold and used in that neighborhood.

The presiding judge, in his charge, called the attention of the jury to this evidence, advising them that if they were satisfied from it, beyond all reasonable doubt, that the matches so found were from the same lots used at the prisoner's dwelling house, it was a circumstance which they should consider in connection with the threats made by the defendant in determining whether they were placed there by him; that if he did place them there, it would appear that these threats were not mere idle declarations to intimidate Mr. Marshall, but that when he made them he was fearfully in earnest. He added, that if they were satisfied that the prisoner placed the kindlings and matches at the wood-shed *and ignited the matches as described by the evidence*, they should consider the circumstance in connection with the threats, on the question of his guilt or innocence. The defendant's counsel excepted to each of these propositions, and moreover requested that the contrary should be charged, and excepted to the ruling by which that was refused.

After the verdict of guilty, the county judge gave a certificate to stay the sentence and the record and bill of exceptions were returned to the Supreme Court on certiorari, when the judgment on which this writ of error was brought was given.

*J. C. Ormsby*, District Attorney, for plaintiffs in error.

*W. T. Odell*, for defendants in error.

DENIO, Ch. J.   I am of opinion that the evidence admitted was too uncertain and too remote from the point in issue to have any legal bearing upon the case.   There was no reason to believe, and certainly no evidence that it was connected with the act of burning the barn.   If the matches had been ignited and had gone out without producing any further combustion, as is assumed in the judge's charge, though there was no evidence of such a fact unless it was furnished by the inspection of the matches by the jury, they were no part of the instrumentality used in the principal burning, which must have been effected in some other manner, probably by using matches in direct contact with some of the combustible matter in the building.   Besides, the place where they were found was too remote from the building burned to allow an inference of any identity of design between the two acts at the time they were committed.   Moreover, the matches were found about a week after the burning of the barn, and the evidence did not indicate any length of time between the placing them there and the finding of them.   If they were put where they were found with an evil intent, it was presumptively with a view to burn the house, and not the barn. The evidence, therefore, tended to show the commission of another offense than the one for which the defendant was indicted, or the attempt to commit one; and the general rule is, that on an indictment for one criminal act you cannot, in order to prove the criminal intention of the accused, prove the commission of another for which he was not indicted.

Passing by, for the moment, the inference supposed to be derivable from the comparison of the matches, we have nothing to connect the prisoner with the act of depositing those which were found, except his threats, and the malicious state of mind of which they were in evidence.   This, it may be conceded, raised a presumption of some weight that he had burned the barn.   It was presumably fired by some person who had malice against Marshall, the owner.   A presumption of the same kind and the same status arose out of the same circumstances, that he had attempted to burn the wood-house and dwelling.   It was no stronger than that

which related to the principal fact, and it was weaker because it derived no aid from the evidence that the prisoner falsely pretended that he was at home and in bed on that evening when the barn was burned, which evidence did not apply to the depositing the matches, for the want of proof of the time when that was done. But suppose the presumption that the prisoner did each of these acts was equally strong. The proof as to one could not tend to prove his criminality in regard to the other. We cannot presume that he burned the barn, because we presume that he attempted to burn the house. One presumption will not aid the other. The infirmity which attaches to the one, equally attaches to the other. The logic upon which circumstantial evidence is based, is this: We know, from our experience, that certain things are usual concomitants of each other. In seeking to establish the existence of one, where the direct proof is deficient or uncertain, we prove the certain existence of the co-relative fact, and thus establish with more or less certainty, according to the nature of the case, the reality of the principal fact. But the reasoning is a perfect fallacy, if the defect of proof which renders it necessary to call for the aid of the collateral circumstances equally attached to such collateral circumstance. It is like the blind leading the blind.

Supposing this to be too plain to require further explanation, I proceed to consider whether the fact that the matches found under the wood-house, were of the same kind with those which the defendant's wife had, alters the case. The fact that they were different from those which were kept in the prosecutor's house, only goes to protect him and his family from the imputation of having left them where they were found. But the matches found were identical in kind with those which were used in the defendant's house. They were, however, a very common article, and in the hands of almost everybody. Mr. Marshall said that they could be had at any store in the county, and he supposed at almost every house. There was nothing peculiar then in the fact that the defendant had them. If they attached suspicion to him, they would have equally implicated all the neighboring deal-

ers and inhabitants. We cannot, therefore, say that the collateral fact is sufficiently established to allow it to be made the basis of an argument to prove the existence of the principal cause. For myself, I do not think the identity of the matches advances the proof at all. Circumstantial evidence, I repeat, consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture.

I am of opinion, therefore, that the court of sessions fell into an error in receiving the evidence, and in its advice to the jury that they might consider it, in coming to the conclusion, that the prisoner was guilty of the arson charged. The judgment appealed from should be affirmed.

The counsel for the defendant in error contended that we could not entertain this writ of error, because, as he insisted, the people could not bring error where the Supreme Court, after reversing a judgment, had ordered a new trial. But he overlooked a decision of this court upon the precise point. (*The People* v. *Clark*, 3 Seld., 385.)

He also contended that there ought to have been an assignment of errors and joinders. But those forms were abolished by statute, in criminal cases, more than thirty years ago. (2 R. S., 741, § 23.)

Judgment affirmed.