# SUPREME COURT — APPELLATE DIVISION — THIRD DEPARTMENT.

## May 7, 1919.

## THE PEOPLE v. ELIZABETH WHITLOCK.

(187 App. Div. 863.)

(1.) ARSON*—BURNING OF HAY BARN AND STACKS OF GRAIN—EVIDENCE—FINDING OF BEER BOTTLE AND NEWSPAPER—FOOTPRINTS.

Upon the trial of an indictment for the crime of arson in burning a hay barn and several stacks of grain located about one-quarter of a mile from the defendant's home, it appeared that near one of the stacks there was found an uncorked beer bottle partially filled with kerosene, a sheet of newspaper printed in the Syrian tongue, and also two lines of shoe prints extending toward the defendant's home, but it was not shown that the defendant possessed at the time a quantity of beer, or that the footprints were made by her, and it appeared that she was an elderly Irish woman, and that neither she nor her husband read or understood the Syrian language or took a Syrian newspaper.

*Held*, that the circumstances were insufficient to sustain a conviction of the defendant.

(2.) SAME—ILL-WILL.

Ill-will may indicate the presence of a desire to do another an injury, but in probative value falls far short of a definite, well-fixed intention to commit the particular crime committed.

(3.) SAME—THREAT TO BURN.

An expression of intent to burn out a neighbor when not followed by any overt act for two years, is of slight consequence to prove that the person who threatened carried out the threat. Threats alone are not sufficient to identify the person who commits a crime.

(4.) SAME—CIRCUMSTANTIAL EVIDENCE.

Circumstantial evidence in order to sustain a conviction must exclude every other reasonable hypothesis except the guiltiness of the defendant as an explanation of the circumstances proven.

---

* See note, Vol. 24, p. 175.

34

APPEAL by the defendant, Elizabeth Whitlock, from a judgment of the County Court of Tompkins county, rendered against her on the 21st day of November, 1918, convicting her of the crime of arson in the third degree, and also from an order denying her motion for a new trial.

*John Courtney, Jr.* (*Clayton R. Lusk* of counsel), for the appellant.

*Arthur G. Adams,* for the respondent.

H. T. KELLOGG, J.:

This is an appeal from a judgment of conviction following the trial of an indictment for the crime of arson. The appellant contends that the proof was insufficient to warrant the judgment.

The property destroyed was located upon a farm occupied by one James Kintz, situate on the westerly side of the highway extending north and south. It consisted of a hay barn and several stacks of wheat and oats piled upon the ground within 20 feet of the corner of the barn. To the north of the barn about 100 feet was the Kintz home, no part of which was touched by fire. To the south the nearest house on the same side of the road was the home of the defendant, which was distant about one-quarter of a mile. The property was insured in part, but insufficiently to cover the loss. Consequently suspicion did not fall upon James Kintz as the author of the fire.

The fire started shortly after midnight in the grain stacks and spread to the barn. Near one of the stacks there was found during the fire an uncorked beer bottle partially filled with kerosene. There was also found nearby a sheet of newspaper printed in the Syrian tongue, which does not appear to have been either torn or burnt. South of the grain stacks were

two lines of shoe prints extending five hundred feet to the south over ploughed or cultivated ground. One track came north, bent around at the grain stacks, and merged into the track going south. In the former the prints were two feet apart, in the latter from' five to six. These "mechanical traces," as Wigmore calls them, may have been sufficient to justify the conclusion that the fire was of incendiary origin, but they fell far short of implicating the defendant in a crime the commission of which they indicated.

The bottle and Syrian newspaper were valueless as evidence for this purpose. Had it been shown that the defendant possessed at the time a quantity of beer some inference might have arisen that the bottle in question came from her supply. The finding of ale bottles at her home, having the same shape and bearing the name of the same manufacturer, afforded no possible ground for reasoning to the same end. The same manufacturer shipped thousands of similar bottles yearly to the foreign residents of the community, at any of whom the evidence pointed fully as well as it did to this defendant. The Syrian newspaper was equally valueless as proof. The defendant was an elderly, ignorant, Irish woman. It is not pretended that either she or her husband read or understood the Syrian language, or took a Syrian newspaper. Such a paper, or a piece thereof, was lying in her yard. It might have been dropped there, or blown there from the hands of a Syrian passing by. The same is true of the paper at the fire. It was not shown that the two papers formed parts of the same newspaper. It was not shown that the defendant ever had possession of such a newspaper. Both papers, doubtless, came originally from a Syrian source. The home of the defendant was not such a source.

The shoe prints possessed greater significance, but insufficiently identified the defendant as the author of the fire. They were ten and three-fourths inches long and four and three-

fourths inches wide. This indicated a moderately long and unusually broad shoe. The defendant ordinarily wore a number five shoe which measured in width less than three and one-half inches. A pair of rubber shoes was found at her home, and the shoes were inserted in the footprints. Although James Kintz testified that the shoes exactly fitted, nevertheless the plaster casts, which he made by allowing liquid plaster poured into the prints to harden, measured a quarter of an inch longer and a quarter of an inch wider than the shoes in question. It is easy to understand that the forward motion of walking and running might cause a print to be made which would be greater in length than the shoe which made it. It is not easy to understand how that motion would increase the width of a print over the width of a shoe. The shoes were not owned by the defendant, but by Merritt Whitlock, her husband, who customarily used them. On occasions when it was wet, the defendant wore them in tending a flock of ducks which she possessed. There was no evidence that she ever had them on at any other time, or at any place other than in the yard of her own home. Although in common with all the neighborhood she attended the fire within a half-hour of its start, no person testified that she wore these shoes upon that occasion. Moreover, though the daughter and son of James Kintz thought that Merritt Whitlock wore laced shoes at the fire, Whitlock himself testified that he wore the shoes in question. Many witnesses testified that the shoe prints going south from the fire indicated a stride between five and six feet in length. It is scarcely credible that an elderly woman five feet five inches tall, weighing 140 pounds, could either running or walking, take such a stride.

It is said of shoe prints in Burrill on Circumstantial Evidence, at page 267: " Where no peculiar marks are observed, but the correspondence thus proved is merely in point of superficial shape, outline and dimensions, and those of the ordinary

character, it may serve to confirm a conclusion established by independent evidence, but cannot be in itself safely relied on, on account of the general resemblance known to exist among the feet and shoes of persons of the same age and sex." In People v. Newton (3 N. Y. Cr. Rep. 406) the General Term of the Fifth Department said "Tracks made in the soil, although they correspond in dimensions with the shoes worn by the person charged, have but little significance unless there be some distinguishing peculiarity in such tracks and shoes." In that case shoe prints at a fire exactly corresponding to shoe prints at the home of the defendant, accompanied by evidence of ill-will and consciousness of guilt, were held insufficient to connect the defendant with the crime. In People v. Kennedy (32 N. Y. 141) it was attempted to identify the defendant as the author of a fire, among other things, by the fact that he carried matches which were identical with matches found in the vicinity of the fire. It was there said by DENIO, Ch. J., "Circumstantial evidence, I repeat, consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious if the circumstances from which we seek to deduce the conclusion depends itself upon conjecture." There was nothing peculiar or individualistic concerning the shoe prints or the shoes in question in the case before us. Many similar shoes of the same make and character had been sold to foreigners who dwelt in this community. As the witness Rhynard said, the shoe track was "just an ordinary shoe track; nothing peculiar about it." Moreover, as in the Kennedy case so in this case, the very fact from which guilt was conjectured was itself the subject of mere conjecture.

The prosecution laid great stress upon threats made by the defendant prior to the fire. Threats to commit a particular crime are significant to prove the commission of that very crime by the person making them "for the reason that the

threats indicate an intention to do it, and the existence of this intention creates a probability that he has in fact committed it." (Stokes v. People, 53 N. Y. 175.) In this case the words used on various occasions by the defendant, in the main, showed merely a state of ill-will on her part toward the family of James Kintz. Ill-will may indicate the presence of a desire to do another an injury, but in probative value falls far short of a definite, well-fixed intention to commit the particular crime committed. Only one witness testified to words used by the defendant prior to the fire indicating a purpose on her part to set it. After many suggestions and reminders by the prosecution, this witness finally stated that he remembered the defendant " saying the house would be burned down on top of them, or some such way." He did not give the date of this conversation with the defendant, but from other testimony given by him it would appear that these words were used in a talk he had with the defendant two years prior to the fire. An expression of intent to burn out a neighbor when not followed by any overt act for over two years, is certainly of slight consequence to prove that the person who threatened carried out the threat. In any event threats alone are not sufficient to identify the person who commits a crime. In this case they constitute substantially the only proof to implicate the defendant.

The presence of the defendant in the vicinity of the fire, after it was discovered, possessed no significance whatever. She was seen standing from eight to twelve feet from the center of the highway running north and south past the Kintz farm, on the easterly side thereof, about half way between her home and the fire. She was seen there by the occupants of an automobile who were traveling from Cayuga lake, about a mile away, to attend the fire. Their car lighted up the defendant, who did not move away or seek to conceal herself. She was thus seen about half an hour after the fire had been started.

All of the neighborhood had gone to the fire, including her husband, Merritt Whitlock. He testified that she was in bed, undressed, when he left their home to go to the fire. He appeared at the fire about twenty minutes after it started, and the defendant appeared about ten minutes after he did. The proof is entirely consistent with the fact that she was at home and asleep when the fire started, got up and dressed to walk to the fire, and when about half way there, stepped to the side of the road to let the automobile go by.

In cases of this kind, based exclusively on circumstantial evidence, it is familiar doctrine that such evidence, in order to be sufficient, must exclude every other reasonable hypothesis except the guiltiness of the defendant as an explanation of the circumstances proven. We do not think that the circumstances proven in this case are sufficiently strong to accomplish that result. They point with a certainty as great to the guilt of the husband of the defendant, and of others in the community, as they do to the guilt of the defendant. We think they were entirely insufficient to warrant a jury in arriving at a verdict of conviction.

The judgment should be reversed and a new trial granted.

All concurred.

Judgment of conviction reversed and a new trial granted.