Habéis, J.
The defendant-appellant was indicted by Grand Jury at a Trial Term of the Supreme Court in the County of Wyoming for the crime of arson in the first degree; such indictment was transferred to the County Court of Wyoming County and the defendant placed on trial thereon in sucl) court; prior to the trial in County Court, by order of the court the defendant was examined by a.psychiatrist who reported tcthe court that he was then sane; as a result of such trial he was found guilty as charged." The conviction was under tha1 portion of section 22.1 of the Penal Law, which is quoted as follows: “ A person who wilfully burns, or sets on fire, in the night time: 1. A dwelling-house in which there is, at the time, a human being; * * *. Is guilty of arson in the first degree.” After the conviction the defendant’s motion to set aside the verdict and for a new trial was denied, and he was sentenced to be imprisoned in Attica State Prison for a period of not less than ten years, nor more than twenty years. (Penal Law, §§ 224, 2189.)
On this appeal the defendant raises but one question and that is the alleged error of the trial court in receiving certain testimony offered by the People and over the objection of the defendant regarding cruel and vicious acts and unkind conduct and threats made by the defendant against his wife, Viola Bates, and against their child, both of whom at the time of setting of the fire were in the dwelling concerning the burning of which the defendant was convicted of arson. Such dwelling was owned by and the dwelling place of Mrs. Lillian Woods, and residing with her at the time in the dwelling as regular members of the family were her daughter and son-in-law, two grandchildren and another man. Sleeping in the house at the time as temporary guests were the defendant’s wife. Viola Bates (who was the *552 granddaughter of Mrs. Woods), and his infant child David. The house was located on a farm on a country road and some distance from any other occupied place of habitation. It was a two-story house with a parlor, a bedroom, a sitting room, a dining room, a kitchen, a pantry and a woodshed all downstairs, and upstairs several bedrooms, a storage room and a tank room. The floors were all hardwood. The fire was discovered after midnight on June 22d, and practically destroyed the house; all of the occupants escaped therefrom unharmed. At one time prior to the burning, the defendant and his wife had resided with Mrs. Woods in this house, and he was familiar with the layout of the same. On the night of the fire, Mrs. Bates and the child were there because they were then living-separate from the defendant. There can be no question raised as to the agency of the defendant in starting the fire, but his claim has been and is that such starting was accidental on his part. His story was that late at night he entered the house seeking- his wife and child and, although he did not make his presence known to anybody in the house, he had lit matches to examine the house and probably to light cigarettes, and that when he dropped these matches they may have been afire. Three points of fire were found in the house all at places where the defendant admitted he had been and where it is fair to assume he dropped lighted matches. His contention is that if the matches were alight, the burning by his agency was accidental and not known to him. There was some proof that inflammable oil, which had been in cans in the woodshed, had been emptied during the night, but there was no odor of the same. Following his visit to the house, the defendant went to Buffalo and returned the next day to the neighborhood. He was apprehended and without knowing of the fire gave conflicting- versions of his whereabouts that night and his reasons for going to Buffalo.
Barren of the proof to the introduction of which the defendant made objection, and which was received over his objection, it can be said fairly that the criminality of the agency of the defendant in the setting of the fire rests on a rather meager record. This proof concerned the lives of his wife and their child prior to the fire.
A conviction for the crime of arson in the first degree must be based on a willful criminal intention to set fire to the dwelling-house in which there is a human being, in the nighttime. Intent and willfulness are very seldom provable by direct evidence ; if proven by circumstantial evidence, such evidence must *553 be clear, convincing and lead directly to the conclusion of guilt. Motive sometimes establishes intent, but motive is an operation of the mind and of the thought concealed in the human breast that seldom is provable except by circumstantial evidence.
The proof on which this appeal is based was as follows: When the defendant was twenty-nine years of age, and Viola Siebert was then eighteen years old, they were married on the 25th day of January, 1942. Later, in June, 1942, he went into the armed services of the United States. During the period between their marriage and his entrance into the armed i services, they lived together for only four months, one month spent at his mother’s home and the other three months at the Woods dwelling. During this period that they were at the Woods home, he treated his wife in a cruelly vicious fashion burning her bare arms and legs with lighted cigarettes and matches and throwing her violently to the floor. Apparently, Mrs. Bates was pregnant prior to her marriage, and the defendant at one time stated that he was endeavoring to cause her a miscarriage. On July 29, 1942, the son David was born. While he was in the service he received reports that his wife was going to places of amusement with her sister and meeting other mén (there was no charge of improper conduct). He wrote his wife finding fault with her conduct and threatened to kill both her and the child. After service abroad (he was discharged from the service in July, 1944) they lived for awhile with his wife’s folks until they insisted that he establish a home of his own for his family and go to work to support his family. He became angry and said he would get even with them. For a short time they had a separate home, but their married life continued unhappy; he did not work and the wife did. He physically molested the child and said he did not care if the child got killed. He cut up the clothes of his wife and argued with her when she went out with her sister and her sister’s husband to drinking places, and he threatened his wife if she did not stop going out evenings with those folks he would kill her. Subsequently, one day he locked her out of the apartment and she went to live on the Woods farm with her family. He" kept the child with him, but finally the child was taken into the custody of the County Welfare Department and placed in the care of the mother. Within two weeks prior to the fire, he admitted that he had recently threatened to kill her, the child and himself. It was three weeks after the parting of the couple when he locked her out of the apartment that the burning of the Woods dwelling took place.
*554 On the trial, the defendant attacked the receipt of the proof of these relations of himself and his wife and his child, and, as has been said, the overruling of his objections in this regard is the sole basis of this appeal. He raises two questions, one is that the acts and conduct covered by such evidence are proof of other crimes and that such proof is not admissible to establish on trial the guilt of the defendant of the crime for which he is indicted; the other ground is that certain of the acts were too remote from the time of the fire to be received on the trial. Appellant also bases his appeal on a certain ruling made when these matters were offered in evidence and objection taken thereto: “ The Court: I will overrule the objection and give you an exception. It is received for the purpose of showing relationship of the parties while they lived together.” After the charge, the defendant’s counsel took exception “ to the instruction to the jury that they may consider it [the conduct of the defendant] as showing the general relationship upon the ground that the relationship of the parties is utterly immaterial unless it is on the question of motive.”
Motive and specific intent must often be proven by circumstantial evidence. Although there is the general rule (People v. Fitzgerald, 156 N. Y. 253; People v. Bennett, 49 N. Y. 137; 1 Greenleaf on Evidence, § 13) that ordinarily there must be excluded on the trial of an indictment proof of crimes other than that on which the defendant is being tried, there is the excepting rule that the general prohibition against such proof of other crimes falls when it becomes necessary to show motive and intent, and especially when such motive and intent cannot be proven by direct evidence. (People v. Buchalter, 289 N. Y. 181; People v. Thau, 219 N. Y. 39; People v. Molineux, 168 N. Y. 264; People v. Fitzgerald, 156 N. Y. 253; People v. Peckens, 153 N. Y. 576; People v. McLaughlin, 150 N. Y. 365; People v. Harris, 136 N. Y. 423.)
The exception quoted as being taken against the ruling on the admission of evidence, and the exception to the quoted portion of the court’s charge as given, neither avail the appellant because it was clear that the court received such testimony solely as bearing on the question of motive.
There remains for consideration the contention of the defendant that at least part of the proof received was of occurrences too remote from the time of the setting of the fire to be of any probative value and that, therefore, the admission of such proof was substantially harmful to the appellant. The fire occurred June 22, 1945. The recital of the unpleasant conduct *555 of tile defendant toward his wife in the earlier instances covered, goes back to 1942. At first blush, it would appear that occurrences in 1942 are unduly remote from June, 1945, but when it is borne in mind that the tale of ill-treatment by the defendant of his wife beginning in 1942, and of his child after the child was born, continues on with similar types of incidents up to two or three weeks prior to the fire, then the thought of remoteness disappears; the whole recital is one picture that was properly given to the jury for its consideration in passing, first, on the truth thereof, and secondly, on its proof of motive as bearing on intent.
The verdict of the jury is supported by the evidence. There was no error by the court of admission of evidence and the judgment of conviction and order denying the motion for a new trial should be affirmed.
All concur, except Dowlixg, J., who dissents and votes for reversal and for granting a new trial, in the following memorandum: In Stokes v. People (53 N. Y. 164), Judge (trover said at page 175: “ Threats to commit the crime for which a person is upon trial are constantly received as evidence against him, as circumstances proper to be considered in determining the question whether he has, in fact, committed the crime, for the reason that the threats indicate an intention to do it, and the existence of this intention creates a probability that he has in fact committed it.” If the defendant were on trial for murder of his wife or child, evidence of threats made to kill her or him would be competent. Their competency in this arson case, especially when the defendant did not know they were in the building set on fire, is not apparent. Over objections and exceptions, repeatedly made, the court received testimony as to the mistreatment of his wife and child and testimony tending to show that the defendant had committed sodomy on his son and had attempted to cause an abortion of his wife before his son was born. These alleged crimes bore no relation whatever to the crime of arson. It was fatal error to receive that testimony. In People v. Duffy (212 N. Y. 57) Judge Hiscock said at page 66: “ It is well established as a general rule that evidence may not be given to show that a person on trial for one crime has committed other ones. The fundamental application and purpose of this rule is to forbid and prevent the conviction of an accused person for one crime through proof that he had committed other ones, where-from the inference might be drawn that because he had thus committed other offenses he was more liable to commit the one *556 in question. (People v. Shea, 147 N. Y. 78, 98.) ” To the same effect is People v. Harvey (235 N. Y. 282, 295), People v. Rosenthal (289 N. Y. 482, 488), People v. Allen (282 N. Y. 511). The receipt of such evidence was fatal to any chance of acquittal the defendant might otherwise have had. In People v. Whitlock (187 App. Div. 863), Judge H. T. Kellogg said at page 867; “ Ill-will may indicate the presence of a desire to do another an injury, but in probative value falls far short of a definite, well-fixed intention to commit the particular crime committed. * * * In any event threats alone are not sufficient to identify the person who commits a crime.”
Present — Taylok, P. J., Dowling, Habbis, McCubn, and Love, JJ.
Judgment of conviction affirmed.