Callahan, J.
The defendant has been convicted of the crime of manslaughter in the second degree based upon a finding of guilt under the provisions of section 1052 of the Penal Law reading in part: “ Mischievous animals. — If the owner of a mischievous animal, knowing its propensities, wilfully suffers it to go at large, or keeps it without ordinary care, and the animal, while so at large, and not confined, kills a human being, who has taken all the precautions, which the circumstances permitted, to avoid the animal, the owner is guilty of manslaughter in the second degree.”
The essence of the charge was that on July 1, 1947, one Stanley Balaban, a boy eleven years of age, was killed by vicious dogs owned by defendant. The dogs were normally kept on a houseboat occupied by defendant, which was moored in Pugsley’s Creek near Olmstead Avenue, in the county of Bronx. The boat was connected with the shore by a plank walk. The evidence disclosed that in the early afternoon of that day several of the dogs, white bull terriers, were seen at large on the shore near the houseboat. The area where the fatality occurred is sparsely settled, and the lines of Olmstead Avenue and those of Barrett Avenue intersecting it at this point are not discernible from the surrounding open lot, as these streets were not paved or otherwise laid out. The locale was overgrown with brush through which a traveled path led to the' shore, where the houseboat was moored. Alongside Olmstead Avenue and the creek, and running easterly therefrom, was a large private bathing beach, the grounds of which covered several city blocks all enclosed in a high wire “ chain-link ” fence. The deceased was at the bathing beach with his mother. He was last seen about 3:20 p.m., when he left her within the confines of the beach, saying he was going to look for his water goggles.
*219 On the westerly side of the bathing enclosure a hole had been made under the chain-link fence by boys who used this means to gain entry without paying admission. The boys were accustomed to hide their clothing in the underbrush nearby.
One Joseph Sherer, sixteen years of age, who had gained access through this hole earlier on the day in question, left by the same means at about 4:15 p.m. While helping some other boys to search for their clothing, Sherer saw a number of white dogs chewing on a small body, which was lying in the pathway on its face with the legs in the path and the head nearer to the creek and partly in the bushes. The hole under the fence was 137 feet from the point where the body was found, and that point was 50 feet from the houseboat.
The police were called by Sherer, and, after a great deal of difficulty in which one policeman was severely bitten and one dog was killed, the dogs were driven off. The body was that of Stanley Balaban. He had been killed by wounds inflicted by dogs.
The principal question that concerns us on this appeal is whether the evidence was sufficient to warrant the finding, implicit in the verdict of the jury, that Stanley Balaban had “ taken all the precautions, which the circumstances permitted, to avoid the animal[s] ”. Under the statute this is made an essential element of the crime, and it had to be established beyond a reasonable doubt. There is no evidence in the case as to the circumstances under which the deceased boy came into contact with the dogs. As far as the evidence discloses, no one saw him or heard any outcry from the time the boy left his mother until his body was found almost an hour later. We know that the place where the body was found was an open lot or, perhaps, within the lines of a mapped street. At least, it was not private property maintained by the owner of the dogs, and the boy was not a trespasser at that point. There is no evidence as to whether the boy knew of the presence of dogs before he was attacked. Whether he had approached the houseboat, or what he was doing immediately before the attack by the animals, is entirely left to conjecture. There was no evidence from which it could be determined as to the direction he was taking, except that when his body was discovered the head was nearer to the creek.
The statute involved is rather unusual in that it makes the conduct of the deceased in respect to efforts to avoid the animals the subject of proof by the People. The law has been on the statute books in substantially the same form *220 for approximately a century and a quarter. (2 Rev. Stat. of N. Y., part IV, ch. I, tit. I, § 14 [1829]; Penal Code, § 253 [1865]; Penal Code, § 196 [1881]; Penal Law, § 1052.) We have been unable to find any case in which the statute has been construed, but we have no doubt that it was the intention of the Legislature to make the conduct of the person killed a material element of the crime and that the “ precaution to avoid ” must be established by the People to the same deg’ree of certainty as all other elements of a criminal offense. The statute, of course, must have a reasonable construction, and the limiting phrase “ which the circumstances permitted ” must be given full consideration. It would seem unreasonable that the Legislature intended that all persons must flee from dogs or other domestic animals on sight. “ Precaution to avoid ” the animal could not mean solely flight in the case of domesticated animals. Surely, it was not the duty of the policeman, who attempted to drive the dogs off the body of the boy, to avoid them, but rather to attack them if necessary. Therefore, the conditions under which the deceased came in contact with the dogs must play a most important part in determining the precaution required to avoid the animal “ under the circumstances ”.
Though the vicious propensities of the dogs were sufficiently established and the jury could consider these facts on the question of the likelihood of the dogs attacking the deceased, such facts do not throw light on the conduct of the deceased, which is put in issue by the statute.
The People concede that there is no direct evidence on this subject in the case, but say that the circumstantial evidence was sufficient to warrant the jury’s finding as to the deceased’s conduct. But to sustain a conviction on circumstantial evidence there must be positive proof of the facts from which the inference of the ultimate fact showing guilt is to be drawn. The circumstantial facts themselves must not be left to inference. “ Circumstantial evidence * * * consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious, if the circumstance from which we seek to deduce the conclusion depends itself upon conjecture.” (People v. Kennedy, 32 N. Y. 141. 145-146.)
As stated in Baird v. Mayor, etc., of City of N. Y. (96 N. Y. 566, 593): “ Circumstantial evidence is defined to be ‘an inference as to the existence of ». fact not actually known, arising *221 from its necessary or usual connection with others which are known.’ (1 Phillips on Evidence, 599, note 177.) ”
In People v. Fitzgerald (156 N. Y. 253, 258), it is said: “ In attempting to prove a fact by circumstantial evidence there are certain rules to be observed that reason and experience have found essential to the discovery of truth and the protection of innocence. The circumstances themselves must be established by direct proof and not left to rest upon inferences. The inference which is to be based upon the facts and circumstances so proved must be a clear and strong logical inference, an open and visible connection between the facts found and the proposition to be proved. When a criminal charge is sought to be sustained wholly by circumstantial evidence the hypothesis of guilt or delinquency should flow naturally from the facts and circumstances proved and be consistent with them all. The evidence of facts and circumstances must be such as to exclude, to a moral certainty, every hypothesis but that of guilt of the offense imputed, or, in other words, the facts and circumstances must all be consistent with and point to the guilt of the accused not only, but they must be inconsistent with his innocence. ’ ’
In People v. Razezicz (206 N. Y. 249, 269), the rule is stated as follows: ‘1 Where evidence is of sufficient probative force a crime may be established by circumstantial evidence. In this case there is no direct evidence of the defendant’s guilt. The testimony is wholly circumstantial. Where the principal circumstance urged from which to infer guilt is wholly based upon an underlying circumstance or inference the testimony is unsatisfactory. ’ ’
The application of these rules of evidence in criminal cases affords protection to the liberty of individuals. We are passing upon the construction to be given to a statute involving a serious crime, manslaughter, and the question of guilt thereunder, and not a question of liability for damages in a civil suit. The guilt of one charged with crime is not to be left to surmise. Inferences of guilt cannot rest on facts not known, but merely inferred. While the question of the inference to be drawn from circumstances proved is for the jury, the courts must see that sufficient basic facts are known or established to warrant the finding of circumstantial evidence to support guilt.
We feel compelled to hold that there" were no facts or circumstances known or proved sufficient to support a finding beyond a reasonable doubt that the deceased had taken all the precautions which the circumstances permitted to avoid the *222 animals. Consequently, we are required to reverse the judgment and dismiss the indictment.