**Galo JARAMILLO, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 69 Civ. 4288.**

United States District Court,
S. D. New York.

March 8, 1973.

Fields & Rosen, New York City, for plaintiff; Samuel I. Ackerman, New York City, of counsel.

Darby, Healey, Stonebridge & Whelan, New York City, for defendant; Thomas Healey, New York City, of counsel.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW

LEVET, District Judge.

This action is based upon a complaint by a seaman against the United States of America brought under the Public Vessels Act (46 U.S.C. § 781 et seq.), the Suits in Admiralty Act (46 U.S.C. § 741 et seq.) and the General Maritime Law. Jurisdiction is not disputed by the United States of America, the defendant.

Defendant in its answer admitted that it managed, operated and controlled the USNS Cowanesque by and through its operating agent, Mathiason's Tanker Industries, Inc., which, pursuant to contract, manner, victualled, supplied and navigated the USNS Cowanesque as a public vessel of the United States used for and on behalf of the United States Navy on national defense missions in support of the national defense efforts of the United States and not otherwise. (See paragraphs Third, Sixth, Seventh, Eighth, Tenth, Eleventh of defendant's answer.)

The answer also admits that the above-named plaintiff was employed by defendant by and through its operating agent, Mathiason's Tanker Industries, Inc., as a member of the crew of the USNS Cowanesque, a public vessel of the United States of America, on the terms and conditions of the shipping articles pertaining to the particular voyage on which the vessel was engaged at the time in question. Except as admitted, defendant denies the allegations in paragraph Thirteenth of the complaint. (See paragraph Thirteenth of answer.)

The specific claims of negligence and unseaworthiness are that on October 22, 1968 at or about 9:00 A.M., while so employed as a bedroom utility man on the said ship and while ascending a certain metal ladder in order to go up to the captain's quarters, plaintiff slipped on a so-called "grease-laden step" and fell all the way down the ladder and was caused to strike his head against the fish plate. (metal frame) on a catwalk. Defendant denies any negligence and the existence of any unseaworthy condition and alleges that if plaintiff was injured in the manner in which he claimed his injuries were due to negligence on his part.

Because of the nature of the action and the fact that the United States of America was a defendant, the case was tried to the court without a jury.

After hearing the testimony of the parties, examining the exhibits and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This court has jurisdiction of the above-entitled action by reason of the Public Vessels Act (46 U.S.C. § 781 et seq.) and the Suits in Admiralty Act (46 U.S.C. § 741 et seq.).

2. At all times hereinafter mentioned defendant was the owner of a certain vessel known as the USNS Cowanesque; defendant was the bareboat charterer of the said vessel; defendant operated, controlled, managed and was in possession of said vessel.

3. On October 22, 1968 plaintiff was a merchant seaman employed as a bedroom utility man aboard the said USNS

Cowanesque. (5.)[1] On October 22, 1968, after plaintiff completed his cleaning duties in the stern area of the vessel, he proceeded towards the captain's room, at the front of the vessel, to clean the same, going by means of a catwalk. (7–8, 26–27.)

4. After walking the length of the catwalk plaintiff proceeded to ascend a certain metal ladder in order to go up to the captain's quarters. (27–28.)

5. Plaintiff contends that on said October 22, 1968 at about 9:00 A.M. he fell from the fourth or fifth step of the said ship's ladder, striking his head on a metal rim on the deck below, and that while lying on the said deck he twisted his right foot around so that the sole was facing him and that in this position he noted grease on the shoe which he described as being "like vaseline." (114–116.)

6. The foot of the ladder from which plaintiff allegedly fell was situated one deck level above the main deck. It was composed of metal treads 6″ deep, approximately 2′ wide. There were metal hand rails on both sides. The ladder led to the captain's deck two levels above the main deck and was an exterior ladder. (28–33.)

7. Plaintiff used this ladder on each of six previous days on which he had worked aboard the USNS Cowanesque and on many days used it several times and at no time between October 16, 1968 and October 22, 1968 did he notice anything wrong with the ladder, saying that it was in perfect shape, clean and dry. (107–108.)

8. On October 22, 1968, for one-half hour prior to the accident which plaintiff said took place, he stood at the base of the ladder and noted that the ladder was in perfect shape, clean and dry. No one used this ladder from 0830 to 0900. (107.) When he started up the ladder he looked at the steps and saw nothing on them—they were clean and dry and in perfect shape (108) and he saw nothing on the deck before he fell. (111.) He also admitted that after he had ascended about three steps he paid no attention to what he was doing as he walked up the ladder. (134.)

8. In certain reports or histories of the accident, plaintiff made no claim that he had encountered grease on any portion of the ladder. (Exs. 1, 2, 3, 4, 5.)

(a) The Personal Injury Report made by the department head aboard the vessel, dated 10/22/68, under "Remarks," reads as follows:

"Jaramillo apparently slipped, while going down the after boat deck ladder, midships, striking the back of his head on the catwalk railing or fish plate at the base of the ladder. There were no witnesses." (Ex. 1.)

(b) The report of the United States Public Health Service Hospital, Norfolk, Virginia, when plaintiff was admitted on October 28, 1968, after reference to a history of seizures, stated: "He then had no seizures or symptoms until 10–22–68 when he slipped on a ladder on board ship, fell backwards, and struck his head on an object that was on the deck. He was knocked unconscious for 45 minutes according to him." (Ex. 3.)

(c) The following notation is contained in a hospital record of plaintiff upon admission on November 8, 1968 to the United States Public Health Service Hospital, Staten Island, New York: "American seaman deck hand on tanker pt present in somewhat delirious state. Unable to get history on admission. Referred to past hx from previous adm." (Ex. 4, page 5.)

(d) At the time plaintiff was admitted as an out-patient at the United States Public Health Service Hospital, Staten Island, New York, the hospital report refers to seizures but mentions nothing about the alleged accident of October 22, 1968 nor anything about grease on the ladder. (Ex. 5.)

1. Unless otherwise specified, numbers in parentheses refer to pages of the steno-graphic minutes of the trial conducted before this court on December 27, 1972.

I find that plaintiff has failed to prove by a preponderance of the credible evidence that the ladder in question was in any way defective or in imperfect condition or that there was any foreign substance thereon or that the ladder or any step -thereof was unseaworthy or that he was injured by any negligence of defendant.

## DISCUSSION

Plaintiff's claim that he fell from grease on the ladder concededly appears to be based on inferences only. The testimony on which this inference is claimed was in substance as follows: That after he fell he saw that there was vaseline-like grease, dark in color, on his right shoe and sock of the type used on the ship's tank covers or pump. (34, 35.)

Plaintiff attempts to trace the origin of the grease which he says he found on his shoe (and sock) to the operation consisting of the discharge of jet fuel from tanks in a hatch covered by tank covers. (22, 23, 24.) According to plaintiff, grease buckets were taken into the hatch and a brush used to put the grease on certain screws and which grease he said "dripped down." (23, 24, 25.) He added: "I see grease all over the deck." (25.) There was no testimony from plaintiff that he walked in any grease.

Plaintiff contended that he got up at 7:00 A.M. on October 22 and that he saw jet fuel being discharged (100) through a hatch opening with a hose put down into the tank. However, when plaintiff attempted to state the time, it was not after 7:00 A.M. but "a day before I went to sleep." (101.) He saw no discharge taking place on the morning of his accident. It was the day before. (102.) The ladder on which plaintiff claims he slipped was not in the work area. (106.)

The entry in the ship's log (Ex. C) contains the following:

"0355, October 22nd, aviation gas hose disc discontinued. 0415, finish discharge. All cargo this port. Tanks inspected, found dry by Mr. Tate. 0435, cargo hoses ashore." (103.)

Plaintiff also conceded that the lubrication could not be done when the cargo hoses are in place. (104.) He also testified that before 8:00 to 9:00 in the morning he was cleaning cabins in the afterhouse. (99.)

All in all, the actions of plaintiff to spin a web of inference, surmise and speculation about the source of the grease, if any, which he said he saw on his shoe and sock is too flimsy to withstand analysis. His testimony is neither logical nor credible.

■■ Jurors are repeatedly charged that their verdicts cannot be based upon speculation or conjecture. The court in a non-jury case must be guided by the same principle. "Speculation" is the art of theorizing about a matter as to which evidence is not sufficient for certain knowledge. LeGrand v. U-Drive-It Co., 247 S.W.2d 706, 712 (Mo.1952).

■ The fact that plaintiff may have had some grease on his shoe, under the aforesaid conditions, is not a basis for proof that the ladder had any foreign substance thereon nor is it proof that any foreign substance on the ladder caused him to fall. To conclude otherwise would be a speculative venture.

In Courtney v. Giant Food, Inc., 221 A.2d 92 (D.C.Ct.App.1966) Quinn, Associate Judge, wrote:

" 'Speculate,' as used in negligence cases, is a word of art with a definite and limited meaning. We say, in effect, that a jury should never be permitted to guess as to a material element of the case such as damages, negligence, or causation. See MacMaugh v. Baldwin, 99 U.S.App.D.C. 247, 239 F.2d 67 (1956); Reece v. Capital Transit Co., 97 U.S.App.D.C. 274, 230 F.2d 824 (1956); Jones v. District of Columbia, supra [D.C. Mun.App., 123 A.2d 364 (1956)]." (At p. 94)

In Rumely v. United States, 293 F. 532, 551 (2d Cir. 1923), Judge Rogers wrote:

"Circumstantial evidence is that evidence which tends to prove a disputed fact, by proof of other facts which have a legitimate tendency to lead the mind to a conclusion that the fact exists which is sought to be established. Bouvier's Dictionary."

Mr. Justice Callahan of the New York Appellate Division, First Department, in People v. Sandgren, 277 App.Div. 217, 220, 98 N.Y.S.2d 371 (1950), wrote as follows:

"As stated in Baird v. Mayor, etc., of City of N. Y. (96 N.Y. 566, 593): 'Circumstantial evidence is defined to be "an inference as to the existence of a fact not actually known, arising from its necessary or unusual connection with others, which are known." (1 Phillips on Evidence, 599, note 177.)'

"In People v. Fitzgerald (156 N.Y. 253, 258, 50 N.E. 846), it is said: 'In attempting to prove a fact by circumstantial evidence there are certain rules to be observed that reason and experience have found essential to the discovery of truth and the protection of innocence. The circumstances themselves must be established by direct proof and not left to rest upon inferences. The inference which is to be based upon the facts and circumstances so proved must be a clear and strong logical inference, an open and visible connection between the facts found and the proposition to be proved.' "

Denio, Chief Judge of the New York State Court of Appeals, in People v. Kennedy, 32 N.Y. 141 (113), 145 (118)–146 (119) (1865), wrote:

" * * * Circumstantial evidence, I repeat, consists in reasoning from facts which are known or proved, to establish such as are conjectured to exist; but the process is fatally vicious, if the circumstance from which

we seek to deduce the conclusion depends itself upon conjecture."

The burden is upon plaintiff to prove his case by a fair preponderance of the credible evidence. This he has failed to do and hence defendant is entitled to judgment in its favor.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter of the litigation.

2. Plaintiff has failed to prove that defendant was negligent in any way or that the ship was unseaworthy in any way or that he was injured as a result of any negligence on the part of defendant or unseaworthiness in respect to the said ship as to the ladder in question or in regard to any other portion of the vessel.

3. Consequently, defendant is entitled to a judgment dismissing the complaint together with the costs and disbursements of this action.

Submit judgment on notice pursuant hereto.