STATE of North Dakota, Plaintiff
and Appellee,

v.

Virgil HAGER, Defendant and Appellant.

Cr. No. 640.

Supreme Court of North Dakota.

Oct. 31, 1978.

Clifford C. Grosz, Wells County State's Atty., Harvey, for plaintiff and appellee.

Ted D. Seibel, Harvey, for defendant and appellant; appeared only by filing briefs but not for oral argument.

SAND, Justice.

Defendant Virgil Hager, was convicted on two counts of delivering alcoholic beverages to a minor. Following a bench trial on 15 February 1978 before the Wells County Court of Increased Jurisdiction, he was sentenced to a fine of $300 and 90 days incarceration in the county jail.

The defendant appealed and contended the trial court erred in denying his motion to dismiss the complaint on the ground the complaint failed to set forth sufficient facts on which a magistrate could make a finding of probable cause to issue an arrest warrant. Defendant also contended and argued that the trial court erred in not releasing to defense counsel parts of a prior statement made by a State witness following direct examination of that witness.

On 3 February 1978, two complaints charging defendant with delivery of alcoholic beverages to a minor, a class A misdemeanor, were sworn to by the Wells County sheriff. The complaints read:

"That on or about the 16th day of December, 1977, in Harvey, Wells County; the above-named Defendant committed the offense of: Delivery of Alcoholic Beverage to a minor in violation of Section 5–01–09 of the North Dakota Century Code, by then and there willfully delivering alcoholic beverages to a minor, namely (. . .), age 15, to-wit that the said Virgil Hager did deliver mixed drinks to the said (. . .) at the apartment of (. . .) at approximately 1:00 P.M. and thereafter on the said date." [Names omitted by this court.]

On the basis of these complaints, an arrest warrant was issued by the Judge of the Wells County Court of Increased Jurisdiction.

Rule 4 of the North Dakota Rules of Criminal Procedure requires a determination of probable cause be made by a magistrate before an arrest warrant is issued. The Rule further provides the probable cause determination shall be made upon the complaint and from any affidavit filed with the complaint. Under the Rule the magistrate may also examine the complainant or any other witness, or both, under oath, in which case the proceedings must be recorded by a court reporter or recording equipment.

There is no evidence in the record indicating the complainant or any other witness was examined by the Wells County Court before the arrest was issued. Nor is there any evidence in the record indicating any affidavits were submitted with the complaint. Accordingly, we must conclude the probable cause determination for the defendant's arrest warrant was based solely on the facts stated in the complaint.

Defendant contends the statements contained in the complaint are conclusions, and in accordance with previous holdings of this court and of the United States Supreme Court are not adequate to serve as the basis for a probable cause determination. *State v. Erdman,* 170 N.W.2d 872 (N.D.1969); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ Analyzing the complaint in accordance with Rule 4, NDRCrimP, and prior decisions of this court and the United States Supreme Court, we note that although the information upon which the magistrate makes his determination of probable cause need not reflect the personal observations of the complainant, the magistrate must be informed of the underlying circumstances from which the complainant gathered that information. *State v. Erdman,* 170 N.W.2d 872 (N.D.1969); *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). The purpose of the complaint is to enable the magistrate to determine whether or not the "probable cause" required to support a warrant exists. The magistrate must be in a position to judge for himself the persuasiveness of the facts relied upon to show reasonable cause. He cannot accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime. *Giordenello v. United States, supra.*

■ Based upon the information contained in the record before us, we have only

the complaint charging the defendant with the offense of delivering alcoholic beverages to a minor. All the complaint contains is a bare assertion that at the time and place set forth in the complaint, the defendant delivered alcoholic beverages to certain named persons in violation of § 5–01–09, NDCC. The complaint contains no assertion that the complainant personally observed the events contained therein, nor does it indicate a source for the complainant's belief. No doubt the complainant based his assertions upon the pretrial statements made by the two minor witnesses in this case, but there is nothing contained in the record that indicates that he informed the magistrate of the source of his information. The complaint itself does not establish probable cause for arrest.

On the day of defendant's trial, immediately preceding opening statements to the court, defense counsel made an oral motion to dismiss on the grounds of a defective complaint in accordance with Rule 12(b), NDRCrimP. Rule 12(b) provides in pertinent part:

"b. Pretrial Motions.

Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. The following must be raised prior to trial: (1) Defenses and objections raised on defects in the institution of the prosecution; (2) Defenses and objections based on defects in the indictment, information, or complaint . . . ; (3) Motions to suppress evidence on the ground that it was illegally obtained."

Rule 12(b), NDRCrimP, specifically provides that a motion based on defects in the complaint other than a failure to show jurisdiction or to change an offense "must be raised prior to trial." Subsection (f) of Rule 12, NDRCrimP, provides that failure to raise a defense or objection that must be raised prior to trial constitutes a waiver of that defense. Because we dispose of the issue of the defective complaint in this case on other grounds we need not decide if defendant's motion to dismiss was timely raised.[1]

We now determine if the trial court's error in denying the motion to dismiss affected the substantial rights of the defendant such as to require a reversal of his conviction. If the error was harmless, defendant's conviction need not be overturned on this issue.

A defendant who is being detained without a judicial determination of probable cause may properly challenge that confinement through a timely made motion to dismiss. In this case, however, the trial court's adverse ruling to defendant's motion to dismiss did not result in any additional restraint on his liberty. Immediately following the trial court's ruling on the motion to dismiss, defendant's trial began and any subsequent incarceration was based upon a conviction as a result of the trial and not because of an improperly issued arrest warrant or an adverse ruling on a motion to dismiss.

In addition to defendant being entitled to release from pretrial detention until a judicial determination of probable cause is made, the usual sanction for an invalid arrest is that neither tangible items

---

1. If we assume that defendant's motion to dismiss was timely made, the record indicates the motion was not made in accordance with Rule 47, NDRCrimP. That Rule provides:

"An application to the court for an order shall be made by motion which, unless made during a hearing or trial, shall be made in writing, state the grounds therefor, and set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion. The motion may be supported by affidavit."

Defendant in this case orally presented his motion to dismiss prior to either opening statements to the court or the taking of any evidence. If considered to have been made "before trial" to comply with Rule 12, NDRCrimP, the motion should have been made in writing in accordance with Rule 47. Because we dispose of the issue concerning defendant's motion to dismiss on other grounds, we need not decide if defendant's failure to present his motion in writing was an effective waiver of the defect or defense.

discovered in a search incident to such arrest, nor verbal statements of the accused obtained as a result of the arrest, are admissible in evidence. *State v. Erdman,* 170 N.W.2d 872 (N.D.1969); Wright, Federal Practice and Procedure: Criminal § 52, p. 37 (1969). Defendant, however, urged this court to adopt a rule that convictions following an illegal arrest are void. This we decline to do. Although both the United States and North Dakota Constitutions require the judicial determination of probable cause as a prerequisite to extended restraints, the judicial probable cause determination is not a prerequisite to the state's decision to charge for a crime. Judicial determination is required only for those suspects who suffer restraints on liberty other than that they appear for trial. Consequently, although an arrestee may challenge the probable cause for his pretrial confinement, his conviction will not be vacated solely on the ground he was arrested without a determination of probable cause. Illegal arrest or detention does not void a subsequent conviction. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54, 68 (1975).

In this case no motion was made by defendant to suppress any evidence obtained as a result of the arrest. Nor is there a claim here on appeal that defendant's conviction rests upon evidence seized as a result of an illegal arrest, or upon a confession secured pursuant to an illegal arrest. Even on independent examination of the record we have failed to uncover any evidence used against the defendant that was secured as a result of his arrest.

█ █ As a result, no substantial rights of the defendant were affected by his illegal arrest as to justify reversal on this issue. The defendant was arrested and released on $5,000 bond. The record does not show how long he was incarcerated as a result of the arrest. The only prejudice suffered by the defendant would be his

brief incarceration or the requirement of furnishing a bond. However, because the defendant did not make his motion until just immediately before trial, which substantially reduced whatever prejudice may have existed, and because we are remanding this case for new trial on another issue, we decline to reverse defendant's conviction on the grounds of an invalid arrest. Defendant is not prohibited on those proceedings from raising the issue of his illegal arrest anew should he be detained prior to trial or desire to suppress any evidence he feels was obtained as a result of the arrest.[2]

As a second but more important issue, defendant contended the trial court erred in not releasing to him parts of a prior statement made by a government witness. Defendant argued the denial was in violation of Rule 16(h), NDRCrimP, and that it entitled him to a reversal of his conviction.

The only evidence offered by the State in defendant's trial was the testimony of two minor witnesses, ages 14 and 15. Following direct examination of the first witness, L. J., defense counsel made a motion in accordance with Rule 16(h), NDRCrimP, for the production of any prior statement made by the witness in the possession of the State. The prosecution agreed to turn the statement of the witness over to the defendant, but requested that parts of the statement not related to the subject matter of the trial be excised. In accordance with Rule 16(h), NDRCrimP, the trial court reviewed the statement *in camera* and excised those portions of the statement which it did not believe related to the subject matter of the witness' direct testimony. The statement of L. J. released to the defendant, with excised portions appearing in brackets, read as follows:

> "We went to (. . .) house and they went up and bought some brandy and we started drinking. We (. . .) me (. . .) and Virgil Hagar. After

---

2. We also take into account that generally a defective complaint may be amended by the State before trial with or without court approval depending upon the time frame in which the amendment is made. With respect to the spe-

cific status and posture of the motion to dismiss the complaint the record is wanting in a number of significant items, making a definitive determination of this issue impracticable.

a while (. . .) started to get drunk so whenever (. . .) asked for a drink we gave her strait 7-UP. Then (. . .) said she had to go to the bathroom and on the way she pasted out. [Then me Virgil and (. . .) started smoking. some Mexican Pot (Virgil got it from his coat pocket) Then (. . .) came home from work and made a golosh type of supper. After that I pasted out for around a hour and when I woke up (. . .) & Virgil were giving (. . .) a ice cold bath to get her sober before 5:30 so she could go uptown and meet her mother. Then (. . .) said to go into the living room and he would take care of (. . .). After a while I went in there and (. . .) was asleep next to (. . .). Then a few guys from Maddock and bought some cocaine from (. . .) and Virgil and then left. Then I passed out again and the next time I woke up (. . .) was in with (. . .) and (. . .) and Virgil were drinking again. Then the brought out the Hashoil then the smoked some. After that I remember (. . .) saying that the Cops were up there and that they were going to get out of there and about a minute after that were were suppose to leave and go out and walk around and sober up. So me & (. . .) went after they left and went over (. . .) and asked her to help us get (. . .) sober but she couldn't at all. Then we walked uptown and you picked us up."] [Names omitted by the Court.]

The defendant objected to the excised part of the statement but nevertheless proceeded to cross-examine the witness L. J. The State then called the other minor as its second witness. Following the cross-examination of the second witness defense counsel recalled L. J. A pertinent portion of that examination and subsequent discussion in chambers was as follows:

"Q. [MR. SEIBEL] Miss Johnson, have you ever taken drugs?

"A. Yes.

"Q. Had you taken drugs on the day in question?

"A. I only drank alcohol that day.

"Q. I ask you once more, did you take any drugs on that day?

"A. No, except the alcohol.

"Q. Your Honor, may I approach the bench, please.

"THE COURT: O.K. Mr. Grosz.

"THE COURT: Let the record show we are in Chambers and Defense council has a motion to make.

"MR. SEIBEL: Yes, I move that I have reason to believe that there is contained in a statement taken from L. J. which states that she used drugs on the day on which it is alleged that the defendant delivered alcoholic beverages to L. J. I thereby move the Court to release this information as it is relevant to the credibility of this witness and pursuant to Rule 16 of the Rules of Criminal Procedure it is incumbent that this evidence be released or that the testimony of the witness must be suppressed.

"MR. GROSZ: Your Honor, I would resist the motion on the grounds that the information in the statement which was given by the defendant, by the witness, L. M. was a statement given on the day of the incident. The information, anything given, related to the voluntary statement, should be released, is anything that came out on direct examination and I think the statement is not, cannot be used, at this point, to be, to attack the credibility of the defendant. I think there should be other means of attacking this, therefore I would resist the motion.

"MR. SEIBEL: May I make a further comment, Your Honor? This evidence is relevant in two respects; it tends to establish the witnesses propensity for veracity or the lack thereof and it also tends to show that the state of mind of the witness during this time was so impaired that she cannot accurately recall the events that transpired.

"THE COURT: The witness in question here has not shown any lack of credibil-

ity in her testimony, she has shown good recall on her testimony, and there has been no showing of impairment of her credibility or remembrance. The other witness, perhaps, but not this one, and I think if you want to attack her credibility you are going to have to do it from some other angle. I therefore deny .the motion."

North Dakota Rule of Criminal Procedure 16(h)[3] is nearly a verbatim copy of the federal "Jencks Act". 18 U.S.C. § 3500 (1976). Although this court has never undertaken an in-depth examination of our Rule 16(h), the Jencks Act has been interpreted a number of times in the federal courts. We find that cases construing the federal statute are instructive in interpreting our own Rule, even though the principles of the Jencks Act are not constitutionally mandated and thus are not binding on the state's criminal courts. *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969).

The legislative history of the Jencks Act is set out in the United States Supreme Court case of *Palermo v. United States*, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). The Jencks legislation was enacted following the United States Supreme Court decision of *Jencks v. United States*, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The Act reaffirmed the Court's decision that the defendant is entitled to relevant pretrial statements of a witness in the possession of the prosecution concerning events and activities testified to by that witness at trial. The legislation was, however, also a reaction to a concern by Congress that misapplication of the Court decision would allow defendants to rove at will through government files. Designed to balance these two interests, the Act is an effort to further the fair and just administration of criminal justice. The purpose of our own Rule 16(h), NDRCrimP, is to achieve the same objectives.

Criminal Rule 16(h)(2) states the trial court, on motion of the defendant, shall "order the prosecuting attorney to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which *relates to the subject matter* as to which the witness has testified." [Em-

---

**3.** (h) Demands for Production of Statements and Reports of Witnesses.

(1) In any criminal prosecution no statement or report in the possession of the prosecution which was made by a prosecution witness or prospective prosecution witness (other than the defendant) to an agent of the prosecution shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination.

(2) After a witness called by the prosecuting attorney has testified on direct examination, the court shall, on motion of the defendant, order the prosecuting attorney to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(3) If the prosecuting attorney claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the prosecuting attorney to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the court and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for' such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

phasis added] One of the primary questions presented in this case is if the excised parts of the statement delivered to the defendant related to the subject matter of the witness' testimony.

■ Federal court cases have held that the decision to require production of prosecution witnesses' statements rests with the good sense and experience of the trial court. The United States Supreme Court held in *Palermo v. United States, supra,* that such decision is subject to the appropriate limited review and must be guided by the standards outlined by the United States Supreme Court. We find this reasoning persuasive and appropriate and apply it to the production of statements under Rule 16, NDRCrimP, especially if they may be useful to determine the credibility of the witness.

■ The State contends the North Dakota Rules of Evidence give the trial court a great deal of discretion in determining evidentiary relevancy questions and that the portions of the statements withheld in this case were not relevant to the witness' direct testimony. Although the State may be correct in its evaluation of a trial court's discretion in ruling on evidentiary matters, the question of whether or not a statement is producible under Rule 16(h), NDRCrimP, is not an evidentiary relevancy question. Rather, the sole basis on which the trial court may excise portions of a producible statement is if those statements do not relate to the subject matter of the testimony of the witness. *Ogden v. United States,* 303 F.2d 724 (9th Cir. 1962), *cert. denied* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86; *United States v. Birnbaum,* 337 F.2d 490 (2d Cir. 1964).

■ The trial court's function under Rule 16(h) is limited strictly to the question of producibility, and it is not to speculate if defense counsel can effectively utilize the statement for impeachment purposes. *Lewis v. United States,* 340 F.2d 678 (8th Cir. 1965).

■ In the trial court's determination of producibility, the fact a statement is consistent with the direct testimony of the witness is not a relevant consideration. Nor, contrary to the State's contention, is the fact that the statement or information contained in the statement would not be admissible as evidence a relevant consideration. That the statement is inconsistent with the witness' testimony, or relates to the credibility of the witness, are, however, considerations that make the statement producible. Federal court cases hold that statements demonstrating bias, interest, or lack of clarity as to recollection of events testified to are producible. *Rosenberg v. United States,* 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); *Ogden v. United States, supra; United States v. Borelli,* 336 F.2d 376 (2d Cir. 1964); *United States v. Pacelli,* 491 F.2d 1108 (2d Cir. 1974), *cert. denied* 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed. 49. A statement as made by the witness in this case, describing common events surrounding the commission of the alleged offense certainly relates to the events and activities testified to and thus should have been given to the defense. *Williams v. United States,* 119 U.S.App.D.C. 177, 338 F.2d 286 (1964).

Rule 52(a), NDRCrimP, provides that any error, defect, irregularity, or variance that does not affect substantial rights of the accused shall be disregarded. This is commonly referred to as the "harmless error" rule, and the corollary to that rule is that if the error may have been prejudicial it is "reversible error." Defendant in this case contends the trial court's withholding of portions of the pretrial statement was a violation of his Sixth Amendment right of confrontation and thus the strict test set forth by the United States Supreme Court for determining harmless error must be used. Under this test the burden is upon the prosecution to prove a constitutional error is harmless, and reversal is required unless the court is able to declare a belief that it was harmless beyond a reasonable doubt. *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh. den.* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241.

■ As stated previously, Rule 16(h), NDRCrimP, is not a constitutional man-

date. Rather, it is an evidentiary discovery rule designed in the interest of fair trials. But unfairness in the application of a rule of evidence or the result of a trial is no sure measure of unconstitutionality. *United States v. Augenblick, supra.* Although non-compliance with a rule or statute, such as Rule 16(h) which has as one of its purposes the effectuation of a constitutional right, may so infringe upon defendant's constitutional rights as to deny him a fair trial, a constitutionally unfair trial takes place in the absence of an express constitutional mandate, only where the barriers and safeguards are so relaxed or forgotten the proceeding is more of a spectacle or a trial by ordeal than a disciplined contest. *United States v. Augenblick, supra.* Such is not the situation in this case.

■ Defendant's constitutional right to cross-examine the witness in this case was not denied. Rather, he was denied the equivalent of a statutory right to evidence which may have aided him in exercising his right of confrontation. Thus, while an error was made during the course of defendant's trial, it was not an error of constitutional magnitude requiring application of the stringent constitutional test in determining harmless error.

■ Because the error committed in defendant's case was not of constitutional magnitude, we apply a less stringent standard in determining if reversible error has occurred. Under this standard, defendant is entitled to a new trial only upon a showing that his substantial rights have been denied. *State v. Johnson*, 231 N.W.2d 180 (N.D.1975). For a substantial right not to be affected, it must appear clearly that defendant was not prejudiced by the error. *State v. Moe*, 151 N.W.2d 310 (N.D.1967). The United States Supreme Court has stated that in determining prejudice in these Jencks Act-type reviewals, it is not for the appellate court to speculate if defendant could have made effective use of the statement on cross-examination. *Rosenberg v. United States, supra.*

This case is not a situation in which the statement withheld contained material merely duplicate to information already in defendant's possession or in which the witness' testimony was unimportant to the proof necessary for the conviction, or in which the statement was wholly void of possible use for impeachment. *United States v. Cleveland*, 507 F.2d 731 (1974) (defense counsel viewed same material before trial); *United States v. Sten*, 342 F.2d 491 (2d Cir. 1965), *cert. denied* 382 U.S. 854, 86 S.Ct. 103, 15 L.Ed.2d 91, *rehearing denied* 382 U.S. 949, 86 S.Ct. 402, 15 L.Ed.2d 357 (statement was not inconsistent with testimony). Rather, the information contained in the statement had a bearing on the witness' veracity as well as both her ability to correctly perceive happenings on the day of the alleged offense, and her later ability to recall those perceptions. The value of the statement is particularly apparent in view of the fact that the witness testified she had not used drugs on the day of the alleged offense, which was specifically contrary to her prior statement. The degree of the error is also shown in the previously quoted statement of the trial court judge that the other witness' credibility was impaired.

■ It is not for us to speculate whether or note the defendant could have used the excised statements to effectively destroy the credibility of the State's witness. However, where defendant's conviction rests entirely on the testimony of two witnesses, one of whom the trial court specifically found not credible, and the other of whom the defendant was denied parts of her prior statement containing information of possible impeachment value, the defendant has been denied a substantial right constituting reversible error.

Case remanded for a new trial.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VandeWALLE, JJ., concur.