STATE of North Dakota, Plaintiff and Appellee,

v.

Harold KNOEFLER, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Harold KNOEFLER, Defendant and Appellant.

Crim. Nos. 844, 845.

Supreme Court of North Dakota.

Oct. 20, 1982.

John Greenwood, Asst. State's Atty., and Charles J. Gilje, State's Atty., Jamestown, for plaintiff and appellee; argued by John Greenwood, Asst. State's Atty., Jamestown.

Hjellum, Weiss, Nerison, Jukkala & Wright, Jamestown, and Roger S. Hanson, Santa Ana, Cal., for defendant and appellant; argued by Charles M. Carvell, Jamestown.

SAND, Justice.

Defendant Harold Knoefler was convicted of violating North Dakota Century Code §§ 4–12–03, maintaining bees without a license, and 4–12–03.1, establishing a bee location within two miles of another bee location. Judgments of conviction were entered and he appealed.

The criminal complaints and warrants of arrest of defendant were issued 3 August 1981. Defendant appeared before the County Court with Increased Jurisdiction, pleaded not guilty, and was released on his own recognizance. Judge Herseth, by letter dated 14 December 1981, addressed to Roger Hanson, counsel for defendant, and John Greenwood, Assistant State's Attorney, with carbon copy to Charles M. Carvell, co-counsel for defendant, advised that the case was scheduled for trial to a six-person jury on 8 February 1982. We assume that the judge, in setting the trial date, considered the defendant's right to a speedy trial.

Knoefler, through his attorney Carvell, on 27 January 1982, filed motions to be heard on 5 February 1982 to dismiss the complaints on the grounds that NDCC § 4–12–03.1 under which defendant was charged was unconstitutional and that NDCC § 4–12–03 was enforced on a discriminatory basis. The brief in support of the motion stated, among other things, that an expert would have testified[1] that the two-mile restriction does not control disease or prevent raiding of honey, and, therefore, no rational basis exists for the two-mile restriction regarding the location of commercial beehives. The State, in response to the alleged discrimination, represented to the Court that numerous individuals violated the statutes, but Jack Miller, deputy sheriff for the Stutsman County Sheriff's department, gave all of them, including Knoefler, an opportunity to correct the situation. (This might be considered a warning.) There was no evidence that the other individuals who were warned did not heed the warnings; however, Knoefler told Miller he would move the beehives which were in violation of the statutes "after the honey run was over."

■ Defendant, through his attorney, Charles Carvell, on 3 February 1982, filed a motion for a continuance of the trial based on a misunderstanding between the defendant's attorneys. Knoefler had retained two attorneys, Roger Hanson from California, and Charles Carvell, of Jamestown, North Dakota. Carvell stated that he relied upon Hanson to obtain the experts but on 1 February 1982 he (Carvell) learned from Knoefler that Hanson had not yet obtained an expert. Later, on 2 February 1982, Hanson, in a telephone conversation, informed him (Carvell) of his inability to obtain an expert witness because of conflicts of date. Carvell, on 2 February 1982, contacted an expert witness at the University of Minnesota but was informed that witness would not be available for two or three weeks. Also, each attorney assumed that the other attorney was doing whatever was necessary to secure the expert witnesses, and as a result neither one secured the witness. This, in itself, in our opinion, does not constitute "good cause shown" as required by Rule 6.1, North Dakota Rules of Court, for a continuance.[2]

Appellant's brief states: "Mr. Hanson had from August 1981 until February 1982, approximately six months, to retain an expert. He waited until mid-January before beginning his search for one able to come to North Dakota on the hearing date.... His delay was not a tactical decision, but a negligent one."

---

1. The affidavit of Dr. Roger Hoopingarner, filed with the court, among other things stated:

    "That, in his professional opinion the two-mile law does not effectively control disease or robbing; that these ends are only minimally served by the law; and that these ends can be achieved by much better and more effective methods than the two-mile law."

2. See, *Amoco Oil Co. v. Job Service North Dakota,* 311 N.W.2d 558 (N.D.1981), footnote 5, where each attorney assumed the other would or had taken the necessary steps regarding the filing of a timely notice of the appeal. The attorneys argued that this constituted "good cause shown" under Rules. However, we concluded that the rules of court did not apply to administrative agencies.

From these facts we must determine if the trial court committed error by denying the motion for continuance by either abuse of discretion or by any other standard. An abuse of discretion has been defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Moser v. Wilhelm,* 300 N.W.2d 840 (N.D.1980); *Wall v. Pennsylvania Life Insurance Co.,* 274 N.W.2d 208, (N.D.1979).

In resolving this question we need to take into consideration what testimony the expert witness would have given, what effect, if any, it would have had, and the propriety of presenting such testimony to a court to determine the constitutionality of a statute, as discussed later herein. This, out of necessity, includes at least a brief examination of the Legislature's authority under our Constitution to validly enact a statute such as the one in question.

Under the North Dakota Constitution, the Legislature has plenary authority except as limited by the North Dakota Constitution and the Constitution of the United States and appropriate Congressional acts. The North Dakota Constitution is an instrument of limitations rather than an instrument of grants, such as the United States Constitution. *State ex rel. Agnew v. Schneider,* 253 N.W.2d 184 (N.D.1977).

In the previous case of *State v. Knoefler,* 279 N.W.2d 658, 665 (N.D.1979), we concluded that the spacing requirements of NDCC § 4–12–03.1 were rationally related to the statutory goals of preventing honey raiding and the spreading of bee diseases. We also said:

> "It is now settled that states have power to legislate against what are found to be injurious practices in their internal commercial and business affairs as long as their laws do not run afoul of some specific federal constitutional prohibition or some valid federal law. In determining the constitutionality of statutes regulating commercial affairs under the Equal Protection Clause, courts have required only a rational relationship between the classification and the purpose of the statute. Our court has followed this approach in reviewing equal protection challenges to such statutes. . . .

> "In reviewing the relationship between the commercial classification and the purpose of the statute, it is not necessary that the purpose of the statute be readily ascertainable upon its face. In *United States v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), the United States Supreme Court in April of 1938 had under consideration the constitutionality of the Filled Milk Act of Congress. The court, through Justice Stone, said:

> > 'Even in the absence of such aids [legislative findings], the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.' [Footnote omitted.] 304 U.S. at 152, 58 S.Ct. at 783."

*State v. Knoefler,* 279 N.W.2d at 662–663.

This concept was reaffirmed in *State v. Kainz,* 321 N.W.2d 478 (N.D.1982).

Knoefler, in effect, argued that the purposes of the spacing requirements were not promoted by having the two mile radius and that some other radius would be more effective to protect against the robbing of honey and the spreading of disease. The affidavits submitted by Knoefler reflect that expert testimony would have been introduced into evidence in an effort to establish that the spacing requirements inadequately served the purposes of the legislation and that, therefore, the statute was unconstitutional.

This brings us to the proposition if, and under what circumstances, evidence may be introduced before a court to challenge the constitutionality of a statute in the manner suggested by Knoefler.

On this subject, 16 C.J.S., *Constitutional Law,* § 97, pp. 354–357, states:

"Generally, evidence aliunde is not admissible on the question as to whether the legislature has complied with the constitutional limitations, and although the court will not necessarily confine itself to facts stated in the complaint and admitted by demurrer, but will act in the light of all matters of which it may take judicial notice, including all of the ultimate facts shown in reports of investigations of the legislature on which the enactment is presumably based, it must confine itself to consideration of matters so noticed and those matters which appear on the face of the law. It has been held, however, that the invalidity of legislative action may be shown by facts established by evidence, and that where the determination whether a statute is unreasonable, arbitrary, or not related to the ends proposed turns on factual considerations, the court may consider such facts and hear evidence with respect thereto. So where the validity of the statute is based on the existence of a certain set of facts, and the statute is challenged as applied to new circumstances, the court must admit evidence to sustain the challenge."

The United States Supreme Court in *Communist Party of the United States of America v. Subversive Activities Control Board,* 367 U.S. 1, 81 S.Ct. 1357, 1409, 94–95, 6 L.Ed.2d 625 (1961), said:

"It is not for the court to re-examine the validity of these legislative findings and reject them. See *Harisiades v. Shaughnessy,* 342 U.S. 580, 590, 72 S.Ct. 512, 519, 96 L.Ed. 586. They are the product of extensive investigation by Committees of Congress over more than a decade and a half. Cf., *Nebbia v. People of State of New York,* 291 U.S. 502, 516, 530, 54 S.Ct. 505, 507, 513, 78 L.Ed. 940. We certainly cannot dismiss them as unfounded or irrational imaginings."

See also, *School Committee of Boston v. Board of Education, et al.,* 352 Mass. 693, 227 N.E.2d 729 (1967).

The Court, in the same opinion, also said that the legislative judgment as to how that threat may best be met consistent with the safeguarding of personal freedom is not to be set aside merely because Judges would, in the first instance, have chosen other methods. In the case of *O'Rourke et al. v. Waterfront Commission of New York Harbor et al.,* 118 F.Supp. 236, 237 (S.D.N.Y. 1964), the court said:

"The further suggestion now advanced, that the Court reject the findings of the New York State Legislature and the report of the New York State Crime Commission and that it conduct its own independent factual inquiry to ascertain whether or not there is support for the legislation, is entirely without merit. Not the slightest evidentiary proof has been submitted to raise any issue as to the validity of the findings or to bring them into question."·

Counsel for Knoefler during oral argument stated, in effect, that an expert witness would have testified the two-mile radius is inadequate to serve the stated purposes of the statute and that a seven- to eight-mile radius is necessary to protect against the robbing of honey and the spreading of disease. The affidavit of Dr. Roger Hoopingarner in effect states that the two-mile law only minimally serves such purpose. This would support the proposition that the distance should be greater than two miles.

Assuming the Legislature were convinced of this, and the distances were set at seven or eight miles, we then ask: How could this have benefited the defendant? Can a defendant complain that the law should have been more restrictive (as distinguished from being too vague) and, therefore, is invalid? We do not believe that the ends of justice would be furthered by the endorsement of such concepts. The statement of Knoefler's counsel and the affidavit of Dr. Hoopingarner suggests the further question: Which distance, 1, 2, 4, 6, or 8 miles, provides the greater percentage of protection and at the same time permits the maximum use of the fields for honey production? If this can be resolved, we believe it is for the Legislature, rather than for the courts, to make such determination.

Within the judiciary, at least, it is common knowledge that expert witnesses invariably are available on either side of an issue, and in many instances each side in a lawsuit will produce expert witnesses to support its position. We have no reason to believe that the situation is any different before the Legislature. As an illustration, let us assume it is the same, and the Legislature, after hearing the testimony, makes a decision, comparable to a finding, and enacts a law embracing the version of one side: We then ask, may the other side commence an action, present testimony, and have the court substitute its judgment for that of the Legislature? We think not. If this were permitted the courts would ultimately take over the functions of the Legislature and our basic concept of three separate but equal branches of government would become a nullity.

On a somewhat related matter, in *State v. Kainz,* 321 N.W.2d 478 (N.D.1982), we held that the Legislature had the authority to classify cocaine as a narcotic drug for control and penalty purposes, even though an expert witness testified that cocaine, pharmocologically, is a stimulant rather than a narcotic drug.

■ We conclude that even if the proposed expert testimony had been presented, the court would not have been in a position to validly substitute its judgment for that of the Legislature on the subject matter under consideration. Accordingly, we conclude that the court did not err in denying the motion for continuance and did not abuse its discretion.

■ Knoefler contended the laws were discriminatorily enforced against him and that as a result of selective and arbitrary prosecution he was unconstitutionally deprived of equal protection and due process.

21A Am.Jur.2d, *Criminal Law,* § 833, pp. 282–283, states:

"[The violation of an individual's right to equal protection] . . . may be established where the accused is able to show that other individuals similarly situated have not generally been prosecuted, that the alleged discrimination . . . was intentional or purposeful, and that the selection of the accused for prosecution was based on an arbitrary or invidious classification, such as race, religion, or national origin. On the other hand, mere failure on the part of the state to prosecute other violators of the law in question is not, according to most authorities, a sufficient basis in itself to establish a claim of discriminatory enforcement. And the fact that others who committed the same offense are known to the authorities but are not prosecuted does not ordinarily constitute a violation of the equal protection clause. As otherwise observed, there is no rule of law stating that if some guilty persons escape, those that are apprehended must not be prosecuted. In this respect, it has been noted that if the failure of prosecutors to enforce the criminal laws as to some persons should be converted into a defense for others charged with crime, the result would be that the trial of the prosecuting attorney for nonfeasance would become an issue in the trial of many persons charged with heinous crimes and the enforcement of law would suffer a complete breakdown."

The same authority, in § 834 continues by stating:

"Sex has been held to constitute an invidious or arbitrary basis for selection for prosecution in some cases but not in others. Among matters held or recognized not to be arbitrary bases for selection for prosecution are the type of business conducted by the defendant, the extent or quantum of the defendant's illegal activity, and the public prominence of the defendant."

In *City of Minneapolis v. Buschette,* 307 Minn. 60, 240 N.W.2d 500 (1976), the defendant, at trial, as a defense, raised discriminatory prosecution based on sex on a charge of prostitution. In support thereof she introduced numerous statistics showing that more females than males were being prosecuted. The court observed that henceforth the motion for discriminatory prosecu-

tion should be made before trial.[3]   The court did not agree that statistics alone constitute proof of positive discrimination of enforcement.   The court concluded that the ordinance had a rational relationship to the objective of controlling prostitution and was thus constitutional.

The record reflects that during the same period of time when Knoefler's violation occurred a number of violations by others occurred but they were not prosecuted. The record also discloses that other violators, upon being advised that they were in violation, discontinued the acts which constituted the violation; whereas Knoefler stated that he would move the beehives which were in violation of the spacing requirements after the honey run was over. From the facts established in the record, Knoefler was not singled out for prosecution but forced the State to prosecute by, in effect, seeking a confrontation for purposes of challenging the constitutionality of the law.   We do not believe any person seeking a confrontation can or should be permitted to raise the question of discriminatory prosecution.

We are satisfied that Knoefler does not meet the requirements necessary to establish discriminatory prosecution or that his prosecution was based on invidious classification of race, religion, or national origin. This court, in *State v. Krueger,* 124 N.W.2d 468 (N.D.1963), in substance said that a person cannot excuse his own conduct by showing that someone else who is guilty has not been prosecuted.

We are not convinced that the facts of the instant case constitute an exception to the general rule of law.   The defendant's contention of discriminatory prosecution is without merit.

**3.**  The defense of discriminatory prosecution in this instance was properly raised by motion before trial. Rule 12(b), NDRCrimP, and its subdivisions, contemplate that such defense motions be submitted to the trial court before trial for the sake of judicial economy. The question of discriminatory prosecution per se does not relate to the guilt or innocence of the defendant but may be a defect in the institution of the prosecution. This question is not to be decided by the jury but is to be decided by the

Next, Knoefler contended that the State did not prove beyond a reasonable doubt that he violated NDCC § 4–12–03.1.   Subsection 1 of this statute provides as follows:

"No new commercial location may be established within two miles [3.22 kilometers] of another commercial location.   No commercial operator may establish an apiary within two miles [3.22 kilometers] of another commercial operator.   The noncommercial beekeeper with one to twenty-four colonies will have territorial rights on one location."

A person who violates that section is guilty of a class A misdemeanor.   NDCC § 4–12–20.

██  The record reflects and Knoefler, in his brief, admits that the bee sites were set up in late May or early June.   However, Knoefler argued that, therefore, the offenses could not have been committed on 13 and 14 July as charged in the criminal complaint.   In *State v. Bohl,* 317 N.W.2d 790 (N.D.1982), we said the State is only required to prove the necessary elements of the offense.   Here the offense is the violation of NDCC § 4–12–03.1, more specifically, "No commercial operator may establish an apiary within two miles [3.22 kilometers] of another commercial operator."   The establishing of an apiary within the proscribed area is not only a violation on the date the apiary was established but is a continuing violation for the period of time it is maintained within two miles of another commercial operator.   The date per se is not an element of the offense.   The date may be significant to the defendant for other reasons such as establishing an alibi or other defenses, but that is not the case here.   As an example of continuing of-

judge on affidavits or by any such other method as the court may direct.  *United States v. Berrigan,* 482 F.2d 171 (3d Cir.1973).  Such motions should be treated similarly as are applications for dismissal or quashing of prosecution on constitutional grounds, and if any question of fact is involved the court, in the absence of the jury, should take evidence and decide the question itself.  *People v. Utica Daw's Drug Company,* 16 A.D.2d 12, 225 N.Y.S.2d 128 (1962).

fenses, concealment and having possession of stolen property are continuing offenses, but each day does not constitute a separate offense unless specifically so provided by law. 22 C.J.S., *Criminal Law,* § 9(4), page 37; *Commonwealth v. Ellis,* 233 Pa.Super. 169, 335 A.2d 512 (1975). The same concept applies here. The very nature of the act makes it a continuing offense until the violation ceases. Knoefler takes the untenable position that the offense occurred only on the day the apiary was established or located.

■ The State also established that Harold Knoefler personally on prior occasions obtained permission from the State to place bees in various sites, gave maps to employees with directions to set up the beehives, and on occasion took employees out to the site and gave instructions where and how the beehives were to be set up. Knoefler also testified that it was his job to "red flag" the sites and direct employees to the exact place and location, and that he surveyed Stutsman County regarding plant life to establish future locations. While this may be circumstantial evidence, it does not destroy its validity, nor is the court prohibited from relying upon such evidence. *State v. Olson,* 290 N.W.2d 664 (N.D.1980); *State v. McMorrow,* 286 N.W.2d 284 (N.D. 1979).

■ The trial court in its memorandum opinion noted that the defendant, upon being informed that the beehives were in violation of the law, stated that they would be moved or removed after the honey run was over and that the defendant did not state that he would contact his employer or superiors to find out what should be done. We believe this constitutes sufficient evidence for the court to conclude that the defendant was acting not as a mere employee but as the person in charge. After considering the facts as established in the record, we find Knoefler's argument unpersuasive.

■ Knoefler argued that the mere ordering or directing[4] beehives be set up at a location is not an offense until the apiaries are actually set up within the two-mile proscription. While this argument may have some merit in a hypothetical sense, the facts of this case establish that not only were the locations of the hives ordered or directed to be set up but they were actually established and continued for sometime, including the 13th of July 1981. It became an accomplished fact.

■ Knoefler also contended that the evidence was insufficient to establish that the beehives were within the two-mile proscription. This is without merit. The state's attorney offered an exhibit referring to the charge of locating bees within two miles of another commercial operator, to which the attorney for Knoefler responded, "We will stipulate to the admissibility of this regarding or proving that these individuals are commercial operators and that their bees were within two miles of the Knoefler locations except for those particular counts that did not have the required number of hives on them, which I understand the State will be dismissing those counts." The parties then proceeded to explain to the court which counts should be dismissed as not meeting the necessary criteria and the court dismissed those that did not meet the criteria. The court made a general reference to the exhibits in its memorandum opinion. Under these circumstances we find it difficult, if not impossible, to accept the argument that the State did not prove beyond a reasonable doubt that the beehives were within the two-mile proscribed area, and accordingly it is rejected.

■ Knoefler also argued that he did not have the assistance of effective counsel. We have profound difficulty accepting the argument of one co-counsel that the other was ineffective whenever a defendant is represented by co-counsel because it immediately raises the question, what should the complaining counsel have done to assure or encourage co-counsel to be more effective.

4. If the order is not followed by the employees it may constitute an attempt to commit a crime but we do not express any view on that question because it is not before us.

In *State v. McKay,* 234 N.W.2d 853 (N.D. 1975), we stated what constitutes effective counsel and what standards are to be employed in determining whether or not an individual had effective counsel. The major complaint here is that the expert witness was not made available by the other co-counsel as was anticipated by co-counsel. The propriety of an expert witness's testimony before a court to determine the validity of a statute has been discussed earlier herein and need not be repeated. In addition, when the defendant demonstrably had at least one effective counsel the contention loses its force. We find the argument of ineffective counsel not persuasive.

The defendant also contended that Judge Herseth erred by not allowing the defendant to see notes which State's witness Lester Henderson used to refresh his memory prior to testifying.

Rule 612(b) of the North Dakota Rules of Evidence may have application to this situation. It provides:

"If, before testifying, a witness uses a writing or object to refresh his memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have the writing or object produced, if practicable, at the trial, hearing, or deposition in which the witness is testifying."

Thus, if the witness uses an object or writing to "refresh his memory" and if the "court in its discretion determines that the interests of justice so require," then the writing or object is to be produced. From the facts of this case it is quite obvious that the witness used the document to refresh his memory. It does not matter that the witness did or did not testify pursuant to the object or written document. The key phrase is, "to refresh his memory for the purpose of testifying." This brings us to the next item, the court's discretion in determining whether or not the interests of justice require the production of the item. While Rule 612(b), NDREv, is not identical to Rule 16, North Dakota Rules of Criminal Procedure, or the Jencks Act, nevertheless the thought behind those provisions have application here.

In *State v. Hager,* 271 N.W.2d 476 (N.D. 1978), we had under consideration Rule 16(h)(2), NDRCrimP, which, in substance, requires the prosecuting attorney to produce any statement of the witness in his possession which relates to the subject matter on which the witness has testified. In the *Hager* case, an excised matter was the topic of discussion, and we ultimately concluded that the defendant was entitled to the information which was excised. In the instant case, the document or object which the witness used to "refresh his memory" related to the topic upon which he testified. In *Hager, supra* at 483, we said:

"The trial court's function under Rule 16(h) is limited strictly to the question of producibility, and it is not to speculate if defense counsel can effectively utilize the statement for impeachment purposes. *Lewis v. United States,* 340 F.2d 678 (8th Cir. 1965)."

We also said:

"In the trial court's determination of producibility, the fact a statement is consistent with the direct testimony of the witness is not a relevant consideration. Nor, contrary to the State's contention, is the fact that the statement or information contained in the statement would not be admissible as evidence a relevant consideration. That the statement is inconsistent with the witness' testimony, or relates to the credibility of the witness, are, however, considerations that make the statement producible. Federal court cases hold that statements demonstrating bias, interest, or lack of clarity as to recollection of events testified to are producible. [Citations omitted.]" *State v. Hager, supra* at 483.

We believe the court should have made the document available to the defendant. However, taking into account the factual situation we conclude, beyond a reasonable doubt, that the ruling of the court constituted harmless error. Neither the basic material, nor ultimate facts, were in dispute. Neither was the credibility of any

witness involved, which was the case in *Hager, supra.* As stated earlier, the defendant in effect challenged the authority of the State and sought a confrontation.

For the reasons stated in this opinion the judgment of conviction is affirmed.

ERIKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.