STATE of North Dakota, Plaintiff
and Appellee,

v.

Mark RASMUSSEN, Defendant
and Appellant.

Crim. No. 1053.

Supreme Court of North Dakota.

March 20, 1985.

Alan Duppler, State's Atty., Stanton, for plaintiff and appellee.

Bickle, Coles & Snyder, Bismarck, for defendant and appellant; argued by James J. Coles, Bismarck.

MESCHKE, Justice.

Mark Rasmussen appeals from a judgment of conviction entered after a jury found him guilty of engaging or participating in the business of gambling in violation of § 12.1–28–02(4), N.D.C.C. We affirm.

On April 12, 1984, Agent Milton Lennick of the North Dakota Crime Bureau interviewed Rasmussen about illegal gambling operations in North Dakota. Rasmussen gave a short written statement that said he worked at the coal gasification plant in Beulah from June or July of 1983 through February, 1984, and during that time he

placed bets for people on football parlay sheets which he then passed on to a man known as "Chief."

A statewide grand jury sitting in Cass County, on April 24, 1984, charged Rasmussen with the offense of engaging or participating in the business of gambling in violation of N.D.C.C. § 12.1–28–02(4). Rasmussen was arraigned in Mercer County on May 24, and he moved for discovery and inspection of his testimony before the grand jury and any other statements or writings concerning his responses to questioning by persons he knew to be government agents. The trial court granted the motion but did not specify a time or place for discovery nor did Rasmussen request a specific time for compliance. Correspondence between Rasmussen's counsel and the Mercer County State's Attorney indicates that the State's Attorney tried repeatedly to obtain the material from the Attorney General's office, but met with little success. .

On July 13, Rasmussen moved to suppress any evidence that the prosecution had failed to produce. The court denied that motion on August 10, but did order the State's Attorney to reveal to the court, in camera, before trial, any evidence which was ordered to be produced and which the State intended to use at the trial. As soon as the State's Attorney received the material, he sent copies to Rasmussen's counsel, who received the grand jury testimony on August 17 and the written statement to Lennick on August 20.

In accordance with Rule 16(d)(2), N.D.R. Crim.P., which authorizes remedies for failure to comply with discovery orders,[1] the trial court examined the documents and decided to allow Rasmussen's written statement into evidence, but to limit Agent Lennick's testimony to only foundation for it. The trial court did not permit further testimony from Mr. Lennick about other statements made by Rasmussen. Rasmussen did not seek a continuance because of the late disclosure.

At the trial by a Mercer County jury on August 22, 1984, the State's witnesses were William J. Desmond, an Internal Revenue Service agent who testified on gambling terminology and factors used in determining whether or not an individual is engaged in the business of gambling; Gerald Anderson, who testified about gambling transactions he personally engaged in with Rasmussen in Oliver County; and Milton Lennick, who laid the foundation for Rasmussen's written statement. Rasmussen did not testify, nor did he produce any witnesses to testify on his behalf. The jury returned a verdict of guilty.

Rasmussen contends that he was denied a fair trial because of the State's failure to provide him with a copy of the grand jury testimony and his written statement until a few days before trial.[2]

■ Rasmussen relies on the holding in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), that the prosecution's failure to disclose evidence favorable to the accused upon request violates due process, regardless of the prosecu-

---

**1.** Rule 16(d)(2), N.D.R.Crim.P., provides:

 "*Failure to Comply With Request.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, the court may order that party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, relieve the requesting party from making a disclosure required by this Rule, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and man-

ner of making the discovery and inspection and may prescribe such terms and conditions as are just."

**2.** Rasmussen also argues extensively that the North Dakota Attorney General's office is so closely connected with the Mercer County State's Attorney's office that the discovery order directed to the State's Attorney is binding on the Attorney General. This argument is irrelevant to this appeal. The real issue is not who was responsible for complying with the discovery order, but rather, did the late disclosure prejudice Rasmussen to the extent of depriving him of a fair trial.

tion's good faith or bad faith. *Brady* is not applicable here, however, where the requested material was disclosed before trial and did not appear to be exculpatory.

Rasmussen urges this court to apply the late disclosure standard used by the Idaho Supreme Court in *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978). Smoot's attorney did not receive a copy of a written statement given by the rape victim until after the victim's direct testimony at trial but before the attorney completed his cross-examination of the victim. The jury found Smoot guilty of rape. On appeal, Smoot argued that the late disclosure of the victim's statement denied him due process of law.

The Idaho Supreme Court determined that the proper analysis was whether the lateness of the disclosure prejudiced the defendant's preparation or presentation of his defense to the extent that he was prevented from receiving a fair trial. *Smoot*, 509 P.2d at 1004–05. Prompt disclosure would have had to enable the defense to discover new witnesses or documents to support its theory of the case. The court concluded that Smoot had not been hampered in his presentation since he was able to effectively use the evidence at trial, and he did not request a continuance after he received it.

■ The standard set out in *Smoot* does not differ significantly from our statements in *State v. Hager*, 271 N.W.2d 476 (N.D.1978), where we discussed Rule 16, N.D.R.Crim.P. We observed that Rule 16 is not a constitutional mandate, but rather is an evidentiary discovery rule designed to further the interests of fairness and that noncompliance results in a constitutionally unfair trial "only where the barriers and safeguards are so relaxed or forgotten the proceeding is more of a spectacle or a trial by ordeal than a disciplined contest." *Hager*, 271 N.W.2d at 484. If the alleged error is not of constitutional magnitude, it is reversible only upon a showing that the defendant has been denied his substantial rights. *State v. Johnson*, 231 N.W.2d 180 (N.D.1975). When it is clear that the defendant was not prejudiced by the error, he cannot claim that any substantial right was affected.

■ Rasmussen claims that his trial preparation was hindered because he did not have time to depose Milton Lennick. The assertion is not persuasive since both Lennick and Gerald Anderson were listed on the indictment and could have been deposed at any time. Furthermore, once Rasmussen received the material, he did not move for a continuance on the ground that he needed more time to prepare.

Rasmussen additionally argues that his counsel did not have adequate time to study his written statement, which was not furnished to him until two days before trial, and which was critical because it was the only item of evidence connecting his gambling activity to Mercer County. However, the statement was only one and a half pages long. The trial court did suppress some evidence. Rasmussen did not ask for a continuance. Therefore, we conclude that Rasmussen was not prejudiced by the late disclosure of the grand jury testimony and his written statement.

Rasmussen contends that there was insufficient evidence for the jury to find that the offense charged was committed in Mercer County. Rule 18, N.D.R.Crim.P., says:

"In all criminal prosecutions, the trial shall be in the county in which the offense was committed, except as otherwise provided by law or by these Rules."

Section 29–03–04 of the North Dakota Century Code provides:

"When a crime or public offense is committed in part in one county and in part in another, or when the acts or effects thereof constituting, or requisite to the consummation of, the offense occur in two or more counties, the jurisdiction is in either or any of said counties."

The jury was instructed that before it could find Rasmussen guilty it had to find, beyond a reasonable doubt, that the crime was committed in Mercer County.

William Desmond and Gerald Anderson gave the only direct testimony at trial.

Desmond's testimony was directed not to any specific investigation of Rasmussen but to the criteria used to determine if someone was indeed engaged in the business of gambling. Anderson testified about specific incidents which occurred in Oliver County, not Mercer County. Thus, Rasmussen's written statement was the only evidence of circumstances connecting any of Rasmussen's gambling activity to Mercer County. The statement itself does not say Mercer County is the place where the gambling transactions took place; Rasmussen simply wrote that, while he was working at the gas plant in Beulah (which is in Mercer County), he placed and accepted bets and passed the proceeds on to a man known as "Chief."

 This court has repeatedly held that circumstantial evidence alone can justify a conviction and that a verdict based upon circumstantial evidence carries the same presumption of correctness as other verdicts. *State v. Ohnstad,* 359 N.W.2d 827, 835 (N.D.1984); *State v. Hilsman,* 333 N.W.2d 411, 413–14 (N.D.1983). On appeal, we must view the evidence in a light most favorable to the verdict and where the evidence is conflicting, we will not substitute our judgment for that of the jury if one of the conflicting inferences reasonably tends to prove guilt. *Ohnstad,* 359 N.W.2d at 835–36.

 The jury could have reasonably inferred from all the evidence produced at trial that Rasmussen engaged in the business of gambling in Mercer County, as well as in Oliver County. William Desmond testified that bookies often employ persons who accept bets from third parties and later pass them on to the bookie. Gerald Anderson testified that he obtained line sheets from Rasmussen which he then used to solicit wagers from coworkers at the Minnkota Power Plant in Oliver County. He later turned the bets over to Rasmussen, who paid him for his services. Rasmussen's written statement that he met "Chief" while working at the gas plant in Beulah and that he placed wagers for others which he then turned over to "Chief"

certainly supports a reasonable inference that part of the gambling transactions took place at the gas plant in Beulah. *State v. York,* 326 N.W.2d 208 (N.D.1982).

Accordingly, we affirm the conviction.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, specially concurring.

Although I agree that there is a reasonable inference that the crime took place in Mercer County I do so on the basis of testimony not mentioned by the majority. Absent such testimony I would not join in affirming the judgment of conviction.

The majority relies on the written statement of the defendant. However, the majority unfairly characterizes the contents of that statement when it concludes that in the statement "Rasmussen simply wrote that, while he was working at the gas plant in Beulah (which is in Mercer County) he placed and accepted bets and passed the proceeds on to a man known as 'Chief'." In fact, all that statement says with regard to the location of the crime is:

"I, Mark Rasmussen was employed at the Gas Plant in Beulah, N.D. from June or July of 1983—Feb. 1984. While working thier (*sic*) I meet (*sic*) a man named Chief."

From these facts and the fact that Rasmussen ultimately placed bets with Chief the majority holds that a reasonable inference can be drawn that the gambling activity took place at work. I disagree.

The testimony of Gerald Anderson, who worked in Oliver County, established that all of Anderson's contacts with the defendant were in Oliver County. He turned bets over to the defendant in Oliver County. He was paid by the defendant in Oliver County. He knew of no transactions conducted by the defendant in Mercer County and witnessed none. In my opinion this testimony belies any fairly drawn inference that the defendant conducted gambling activities in Mercer County. However, An-

derson also testified that he distributed line sheets to his fellow employees and friends *at his work place* as well as on his way home from work and at bars. It is this testimony which provides the evidentiary basis for a reasonable inference that the defendant also passed out line sheets at the plant where he worked in Mercer County in similar fashion to Anderson.

Absent such testimony the jury could only have speculated, not reasoned or inferred, that the betting transactions occurred at work and not at home, in bars, or any other place. For an inference, capable of sustaining a verdict, is a process of reasoning by which a permissible deduction of fact is logically and reasonably drawn by the jury *from the facts already proved or admitted. Com. v. Whitman,* 199 Pa.Super. 631, 186 A.2d 632 (1962); *Thomas v. State,* 363 So.2d 1020 (Ala.Cr.App.1978). Conversely, speculation is the art of theorizing about a matter as to which evidence is not sufficient. *Jaramillo v. United States,* 357 F.Supp. 172 (S.D.N.Y.1973). Obviously, mere speculation, surmise, guesswork, conjecture, or suspicion that an accused is guilty is insufficient to overcome the presumption of innocence and does not authorize a conviction. *State v. Miller,* 357 N.W.2d 225 (N.D.1984); *State v. Holy Bull,* 238 N.W.2d 52 (N.D.1975); *Thomas v. State, supra; People v. Johnson,* 43 Ill.App.3d 428, 2 Ill.Dec. 86, 356 N.E.2d 1373 (1976); *United States v. Jones,* 545 F.2d 1112 (8 Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

I must emphasize that the quantum of evidence in this case to support the necessary inference is barely sufficient and its sparseness troubles me. However I believe it provides a minimal basis for a fairly drawn inference which our law provides is sufficient to uphold a jury verdict on appeal. *State v. Ohnstad,* 359 N.W.2d 827 (N.D.1984).

I therefore concur in the ultimate decision reached by the majority.